MARK POE (S.B. #223714)
  mpoe@gawpoe.com
RANDOLPH GAW (S.B. #223718)
  rgaw@gawpoe.com
SAMUEL SONG (S.B. #245007)
  ssong@gawpoe.com
VICTOR MENG (S.B. #254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Plaintiffs

Gerald E. Hawxhurst (Bar No. 220327)
  jerry@cronehawxhurst.com
Arya Towfighi (Bar No. 172418)
  arya@hawxhurstllp.com
Sharon Gelbart (Bar No. 280760)
  sharon@hawxhurstllp.com
HAWXHURSTHARRIS LLP
11111 Santa Monica Blvd., Suite 620
Los Angeles, California 90025
Telephone:   (310) 893-5150
Facsimile:   (310) 893-5195

E. Powell Miller (*pro hac vice*)
  epm@millerlawpc.com
Lawrence J. Murphy (*pro hac vice*)
  ljm@millerlawpc.com
Martha J. Olijnyk (*pro hac vice*)
  mjo@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone:   (248) 841-2200
Facsimile:   (248) 652-2852

Attorneys for Defendants
Living Essentials, LLC and Innovation
Ventures, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

U.S. WHOLESALE OUTLET & DISTRIBUTION, INC., et al.;

Plaintiffs,

v.

LIVING ESSENTIALS, LLC and INNOVATION VENTURES, LLC

Defendants.

Case No. 2:18-cv-1077-CBM-E

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**

Pretrial Conf.:   September 10, 2019
Time:                 2:30 p.m.
Trial date:         October 1, 2019

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L.R. 16, IT IS ORDERED:

**1.      THE PARTIES**

The parties are:

- Plaintiff U.S. Wholesale Outlet & Distribution, Inc.
- Plaintiff Trepco Imports & Distribution, Ltd.
- Plaintiff YnY International, Inc.
- Plaintiff Eashou, Inc. (d/b/a San Diego Cash & Carry)
- Plaintiff California Wholesale
- Plaintiff Sanoor, Inc. (d/b/a L.A. Top Distributor)
- Plaintiff L.A. International Corporation
- Defendant Living Essentials, LLC
- Defendant Innovation Ventures, LLC

The pleadings which raise the issues are:

- Plaintiffs' Second Amended Complaint (ECF No. 35)
- Defendants' Answer and Affirmative Defenses to Second Amended Complaint (ECF No. 39)

**2.      FEDERAL JURISDICTION AND VENUE**

Federal jurisdiction and venue are invoked upon the following grounds:

<u>Jurisdiction</u>:  The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because two causes of action arise under federal law, 15 U.S.C. §§ 13(a) and (d).

The Court has supplemental jurisdiction of Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

<u>Venue</u>:  Plaintiffs contend venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiffs are citizens of California, several of whom having

FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-1077-CBM-E

their principal place of business in the Central District.  Defendants maintain that venue may not be proper as to some Plaintiffs whose principal place of business is outside the Central District.

### 3.   LENGTH OF TRIAL

The trial is estimated to take 10 full trial days.

### 4.   JURY TRIAL

The trial is to be a jury trial.  Plaintiffs intend to proceed with a jury trial in this action on all issues so triable pursuant to Federal Rule of Civil Procedure 38, and demanded a jury trial in both their initial and operative complaints.  (ECF No. 1, 35.)  Defendants intend to proceed with a jury trial as well and request that any equitable claims be tried at the same time as Plaintiffs' legal claims.

At least seven (7) days prior to the trial date the parties shall file and serve by e-mail (a) proposed jury instructions as required by L.R. 51-1 and (b) any special questions requested to be asked on voir dire.

### 5.   ADMITTED FACTS

**Plaintiffs' Position:**

Plaintiffs contend that the following facts have been admitted by way of Requests for Admission, or by judicial admissions, or by the Court's order regarding the parties' motions for summary judgment, and require no proof:

1.   The seven plaintiffs are wholesale businesses in California that sell, among other merchandise, 5-hour ENERGY®.

2.   Defendants Living Essentials, LLC and Innovation Ventures, LLC are Michigan limited-liability companies with their principal place of business in Oakland County, Michigan.  (Answer ¶ 27.)

3.      Living Essentials, LLC is the manufacturer and distributor of 5-hour ENERGY®, and Innovation Ventures, LLC is its corporate parent.  (Answer ¶ 27.)

4.      Living Essentials has manufactured and sold 5-hour ENERGY® since 2004.  (Answer ¶ 30.)

5.      Living Essentials manufactures all bottles of 5-hour ENERGY® in Wabash, Indiana, and then sells and distributes them around the country, including California.  (Answer ¶ 33.)

6.      Paramount Sales Group acts as a broker for Living Essentials' sales of 5-hour ENERGY® to Plaintiffs and other family-owned wholesalers in California. (Answer ¶ 36.)

7.      Paramount does not buy 5-hour ENERGY® from Defendants and then re-sell it to Plaintiffs.  Nor does it ever take possession of the 5-hour ENERGY® that Plaintiffs purchase from Living Essentials, nor does it determine the price that different customers must pay to Living Essentials.  Instead, all sales of 5-hour ENERGY® brokered by Paramount must be approved by Living Essentials. Furthermore, all pricing of 5-hour ENERGY®., including discounts, is set by Living Essentials, and Paramount has no say in the matter.  (Answer ¶ 37.)

8.      Kevin Riffle is the President of Paramount.  (Answer ¶ 53.)

9.      Living Essentials' "list price" to Plaintiffs was $1.45 per bottle for regular strength and $1.60 per bottle for extra-strength 5-hour ENERGY® from January 2012 through the present.  (Answer ¶ 41; Response to RFA No. 7.)

10.     Living Essentials' "list price" to Costco Wholesale Corporation was $1.35 per bottle for regular strength and $1.50 per bottle for extra-strength 5-hour ENERGY® during the relevant time period.  (Answer ¶ 41; Response to RFA No. 8.)

11.     "Defendants sold [5]-hour [ ENERGY®] in interstate commerce." (Order re Motions for Summary Judgment (ECF No. 289) at 4.)

12.    Defendants' "[5]-hour [ ENERGY®] drinks are sold in bottles of like grade and quantity." (*Id.*; Answer ¶ 30.)

13.    "Defendants discriminated against Plaintiffs in favor of Costco based on price." (Order re Motions for Summary Judgment (ECF No. 290) at 4.)

14.    "Defendants offered Costco customers instant rebates, which allowed Costco to charge a customer a lower price." (*Id.* at 8; Response to RFA No. 12.)

15.    "Costco was reimbursed by Defendants for the reduced price that Costco charged the customer." (*Id.*)

16.    "[T]hese instant rebates were not offered to Plaintiffs." (*Id.*; Response to RFA No. 13.)

17.    "[T]he instant rebates constitute price discrimination." (*Id.* at 9.)

**Living Essentials' Position:**

Defendants do not dispute admission Nos. 2-7 and 9 above, and Plaintiffs would have known as much had they not refused Defendants' repeated requests to meet and confer about this section of the proposed Pretrial Conference Order.

Defendants dispute that Nos. 1, 8, and 10-18 are factual admissions requiring no other proof on the following bases:

- No. 1:  Plaintiffs provide no citation to the Answer, discovery response, or other source from which this fact was purportedly admitted. This "fact" is vague as to time and as to what is meant by "in California." Plaintiffs are not all "in California."

- No. 8:  Defendants do not dispute that Kevin Riffle was the President of Paramount at the time of their Answer. To the extent Plaintiffs intend to use this admission for any other period, they will need to elicit testimony to that effect.

- No. 10:  Defendants' admissions were as of the time served. This fact is vague as to the meaning of "present." The list price for Plaintiffs has

changed since Defendants served their Answer and Response to RFA No. 7.  (See Exhibit Nos. 872-878 (USWSUPP-0000004-0000012))

- No. 11:  Defendants' admissions were as of the time served.  This fact is vague as to the meaning of "during the relevant time period."  The list price for Costco Wholesale Corporation has changed since Defendants served their Answer and Response to RFA No. 8.  (See Exhibit No. 879 (USWSUPP-0000013))

- No. 12:  Defendants dispute that a statement in a Court Order is a factual admission.  Nevertheless, Defendants do not dispute that they sold 5-hour ENERGY® in interstate commerce.  Plaintiffs would have known as much had they properly and timely met and conferred as to this fact.

- No. 13:  Defendants dispute that a statement in a Court Order is a factual admission and dispute reference to 5-hour ENERGY® as a "drink." Defendants did not admit this fact in paragraph 30 of their Answer. Nevertheless, Defendants do not dispute that 5-hour ENERGY® are sold in bottles of like grade and quantity.  Plaintiffs would have known as much had they properly and timely met and conferred as to this fact.

- No. 14:  Defendants dispute that a statement in a Court Order on an issue "as a matter of law" is a factual admission and dispute the manner in which this "fact" is worded.  This "fact" is vague as to time and which Costco stores.

- No. 15:  Defendants dispute that a statement in a Court Order on an issue "as a matter of law" is a factual admission and dispute the manner in which this "fact" is worded.  Defendants did not admit this fact as worded in Response to RFA No. 12.  This "fact" is vague as to time and which Costco stores.

- No. 16:  Defendants dispute that a statement in a Court Order is a factual admission and dispute the manner in which this "fact" is worded.  This

"fact" is vague as to time, which Costco stores, and as to what is meant by "the reduced price."

- No. 17: Defendants dispute that a statement in a Court Order is a factual admission and dispute the manner in which this "fact" is worded. Defendants did not admit this fact as worded in Response to RFA No. 13. This "fact" as worded is vague as to time, what is meant by "these instant rebates," and who purportedly did not offer them to Plaintiffs. Furthermore, some of the Plaintiffs have admitted that they were offered rebates and took advantage of them as Costco customers.

- No. 18: Defendants dispute that a statement in a Court Order on an issue "as a matter of law" is a factual admission and dispute the manner in which this "fact" is worded. This "fact" is vague as it is stated out of context.

Defendants contend that the following facts have been admitted by way of Plaintiffs' verified responses to Defendants' Requests for Admission and require no proof:

1.      Each and every Plaintiff received the "everyday" discount of $0.07 per bottle on each and every purchase of 5-hour ENERGY® they made from Defendants.  (Response to Dfts' RFA No. 1.)

2.      YnY International, Inc. never offered a lower price than its regular price (i.e., a sale price) on 5-hour ENERGY® to its customers.  (Response to Dfts' RFA No. 2.)

3.      California Wholesale, YnY International, Inc., Sanoor, Inc. (d/b/a L.A. Top Distributor), and L.A. International Corporation did not advertise a lower price than YOUR regular price (i.e., a sale price) on 5-hour ENERGY® in any advertising or marketing materials, whether electronic, print, or otherwise. (Response to Dfts' RFA No. 3.)

4.     U.S. Wholesale Outlet & Distribution, Inc., Eashou, Inc. (d/b/a San Diego Cash & Carry), Trepco Imports & Distribution, Ltd., and L.A. International Corporation have purchased 5-hour ENERGY® from "Costco."  (Response to Dfts' RFA No. 9.)

5.     California Wholesale, YnY International, Inc., and Sanoor, Inc. (d/b/a L.A. Top Distributor) have not purchased 5-hour ENERGY® from "Costco." (Response to Dfts' RFA No. 9.)

6.     U.S. Wholesale Outlet & Distribution, Inc., Eashou, Inc. (d/b/a San Diego Cash & Carry), YnY International, Inc., and L.A. International Corporation admit that "Costco" stores do not sell all flavors of 5-hour ENERGY®.  (Response to Dfts' RFA No. 11.)

**6.     STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

1.     5-hour ENERGY® is manufactured and distributed by Innovation Ventures, LLC and Living Essentials, LLC, referred to together as "Living Essentials."

2.     Living Essentials sells 5-hour ENERGY® to Costco through a broker engaged by Living Essentials.  At different times during the relevant period, Living Essentials contracted with different brokers:  Level One Marketing, Advantage Sales & Marketing, and Innovative Club Partners.

3.     Costco Wholesale Corporation operates two types of stores, the "regular" Costco stores, which cater to  consumers, and a separate type called the Costco Business Centers, which cater primarily—but not exclusively—to small businesses.

4.      From 2012 to December 2015 there were four Costco Business Centers in California (Commerce, San Diego, Hawthorne, and Hayward).  In

December 2015, the Westminster Costco Business Center was opened.  In August
2017, Burbank and South San Francisco Costco Business Centers were opened.

5.      The invoices that Plaintiffs receive for their purchases of 5-hour
ENERGY®. from Living Essentials are issued directly by Living Essentials, and
Plaintiffs' payments are made directly to Living Essentials.


7.      **CLAIMS & DEFENSES**

Plaintiffs

a.  Plaintiffs plan to pursue the following claims against Defendants:

- Claim 1:  Defendants violated Section 2(a) of the Robinson-Patman Act,
15 U.S.C § 13(a) (Count I).

- Claim 2:  Defendants violated Section 2(d) of the Robinson-Patman Act,
15 U.S.C § 13(d) (Count II).

- Claim 3:  Defendants violated California's Unfair Practices Act, Cal. Bus.
& Prof. Code § 17045 (Count IV).

- Claim 4:  Defendants violated California's Unfair Competition Law, Cal.
Bus. & Prof. Code § 17200 (Count V).


b.  The elements required to establish Plaintiffs' claims are:

**Plaintiffs' Position**

**Claim 1:  Section 2(a) of the Robinson-Patman Act**

- Liability under Section 2(a):

1.  the relevant sales were made in interstate commerce;

2.  the goods were of like grade and quality;

3.  Living Essentials discriminated in price between each Plaintiff and
another purchaser of 5-hour ENERGY®; and

4.  the effect of such discrimination may be to injure, destroy, or prevent
competition to the advantage of a favored purchaser."

ECF No. 289 at 3-4 (citing *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176-77 (2006).

Element 4: Competitive Injury

Injury to competition can be established in two ways:

1. directly, through evidence of "diversion of sales or profits," or

2. indirectly, through evidence that a "favored competitor received a significant price reduction over a substantial period of time [*i.e.*, the *Morton Salt* inference]." *Volvo*, 546 U.S. at 177 (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 49-51 (1948)).

*Sub-element*:  Competition between each Plaintiff and a favored purchaser

*Sub-element for Damages under Clayton Act Section 4*:  Actual Injury and Causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury).

**Claim 2:  Section 2(d) of the Robinson-Patman Act**

• Liability under Section 2(d)

1. The payment or allowance in question involved a transaction across state lines;

2. Living Essentials paid or contracted to make some payment or allowance for the furnishing of advertising or promotional services in connection with Costco's resale of 5-hour ENERGY®; and

3. Living Essentials failed to offer the payments or allowances on proportionally equal terms to all other customers competing with Costco in the distribution of 5-hour ENERGY®. *F.T.C. v. Simplicity Pattern Co.*, 360 U.S. 55, 64-65 (1959) ("Unlike § 2(a), none of [sections 2(c), (d) or (e)] requires, as proof of a prima facie violation, a showing that the illicit practice has had an injurious or destructive effect on competition.")

- Section 2(d) claims do not require proof of injury to competition.

*Simplicity Pattern Co.*, 360 U.S. at 64-65; *Philip Morris, Inc. v. Grinnell Lithographic Co.*, 67 F. Supp. 2d 126, 136 (E.D.N.Y. 1999).

### Claim 3:  California Unfair Practices Act

- Liability under California Unfair Practices Act

1.  That Living Essentials secretly gave rebates, or a spoilage allowance, or other unearned discounts, or secretly gave other services or privileges such as advertising and promotional allowances that were not given to other buyers purchasing on like terms and conditions;

2.  That a competitor was harmed; and

3.  That the payments and other allowances had a tendency to destroy competition.

Judicial Council of California, Civil Jury Instructions, 2017 ed., CACI 3320 (modified)

- Definition of "Secret"

The rebates, pricing terms, advertising, and other promotions at issue in this claim are "secret" if they were concealed from or not disclosed to other buyers. Judicial Council of California, Civil Jury Instructions, 2017 ed., CACI 3321.

### Claim 4:  California Unfair Competition Law

- The "unlawful" prong of Section 17200 of the Business and Professions Code treats the violation of any other law, federal or state, as independently actionable.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002); *See Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951, at *31 (N.D. Cal. June 6, 2016) ("Because Plaintiff has shown that Defendants are liable under 226.7 for these violations, Plaintiff has shown that Defendants are similarly liable under the UCL's unlawful prong.") (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

- Under the "unfair" prong, Business and Professions Code section 17200 proscribes "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187.

**Living Essentials' Position:**

**Claim 1**: Elements required to establish a claim for discrimination in price in violation of Section (a) of the Robinson Patman Act:

> 1) Sales made in interstate commerce (not contested);
>
> 2) Commodities of like grade and quality (not contested);
>
> 3) Price difference between each Plaintiff (the alleged disfavored purchaser) and the alleged favored purchaser (contested)[1]; and
>
> 4) Injury to competition (contested):
>
>> a. actual competition between a favored purchaser and each Plaintiff for the same customers and the same dollar; and
>>
>> b. competitive injury (either direct evidence of diverted sales or profits from each Plaintiff to an identified favored purchaser or indirect evidence showing the identified favored purchaser received a significant price reduction over a substantial period of time); and
>>
>> 5) In a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury: actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover

---

[1] On August 7, 2019, the Court, in its Order re: Motions for Summary Judgement (Dkt. 289, "MSJ Order") ruled that there is a price difference for 5-hour ENERGY® between Plaintiffs and Costco, the alleged favored purchaser. Living Essentials includes this issue in the event of a change in circumstances and/or for preservation of the record and appeal purposes.

damages.

15 U.S.C. § 13(a); <u>Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.</u>, 546 U.S. 164 (2006); <u>Woodman's Food Market, Inc. v. Clorox Co.</u>, 833 F.3d 743 (7th Cir. 2016); <u>Feesers, Inc. v. Michael Foods, Inc.</u>, 591 F.3d 191 (3d Cir. 2010).  <u>See also</u> <u>J. Truett Payne Co. v. Chrysler Motors Corp.</u>, 451 U.S. 557, 562 (1981) ("plaintiff must, of course, be able to show a causal connection between the price discrimination in violation of the Act and the injury suffered"); <u>Camarda v. Snapple Distrib., Inc.</u>, 346 F. App'x 690, 693 (2d Cir. 2009) (granting summary judgment for defendants where plaintiffs failed to "account[] for other factors that may have caused their businesses to decline" and therefore could not prove causation); <u>United Magazine Co. v. Murdoch Magazines Distrib., Inc.</u>, 393 F. Supp. 2d 199, 210-12 (S.D.N.Y. 2005) (not enough to demonstrate plaintiff paid more; must come forward with evidence that price discrimination had detrimental effect on business, not just abstract conclusions, and that lost sales or profits were result of discrimination and not unrelated factors).

For purposes of RPA secondary-line cases (i.e., price discrimination that purports to injure competition among the seller's customers), antitrust injury is the competitor's unfair competitive edge that is used to attract sales or profits from the plaintiff.  In other words, the plaintiff's injury must be traced to the competitor's competitive use of its price advantage.  <u>Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.</u>, 472 F. Supp. 2d 385, 424 (E.D.N.Y. 2007).  "If the price discrimination…was the cause of the plaintiffs' injury, the plaintiffs should be able to match up their losses with gains to the favored competitors."  <u>Id.</u> at 424-25.

**Claim 2**: Elements required to establish a claim for discrimination in payment for services or facilities in violation of Section (d) of the Robinson Patman Act:

       1) Sales made in interstate commerce (not contested);

       2) Commodities of like grade and quality (not contested);

3) Actual competition between the alleged favored purchaser and each Plaintiff (the alleged disfavored purchaser) for the same customers and the same dollar (contested);

4) Living Essentials paid the alleged favored purchaser for services or facilities (promotional allowances) to be used primarily to promote the resale of 5-hour ENERGY® that were not available on proportionately equal terms to each Plaintiff (contested); and

5) In a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury: actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover damages.

15 U.S.C. § 13(d); <u>Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.</u>, 546 U.S. 164 (2006); <u>Woodman's Food Market, Inc. v. Clorox Co.</u>, 833 F.3d 743 (7th Cir. 2016); <u>Feesers, Inc. v. Michael Foods, Inc.</u>, 591 F.3d 191 (3d Cir. 2010).  <u>See also</u> <u>England v. Chrysler Corp.</u>, 493 F.2d 269, 271-72 (9th Cir. 1974) (under section 2(d), "the advantaged and disadvantaged parties must be shown to be competing customers of the giver in order for there to be discrimination").

**Claim 3**: Elements required to establish a claim for discrimination in furnishing services or facilities in violation of Section (e) of the Robinson Patman Act:

1) Sales made in interstate commerce (not contested);

2) Commodities of like grade and quality (not contested);

3) Actual competition between the alleged favored purchaser and each Plaintiff (the alleged disfavored purchaser) for the same customers and the same dollar (contested);

4) Living Essentials furnished services or facilities (promotional services) to Costco to be used primarily to promote the resale of 5-hour ENERGY® that were not available on proportionately equal terms to each

Plaintiff (contested); and

5) In a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury: actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover damages.

15 U.S.C. § 13(e); Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164 (2006); Woodman's Food Market, Inc. v. Clorox Co., 833 F.3d 743 (7th Cir. 2016); Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191 (3d Cir. 2010).  See also England v. Chrysler Corp., 493 F.2d 269, 271-72 (9th Cir. 1974) (under section 2(e), "the advantaged and disadvantaged parties must be shown to be competing customers of the giver in order for there to be discrimination").

**Claim 4**: Elements required to establish a claim for price discrimination in violation of § 17045 of the California Unfair Practices Act:

1) Secret payment or allowance of rebates, refunds, commissions, or unearned discounts from Living Essentials to certain identified purchasers (contested);

2) Injury to a competitor (contested); and

3) The payment or allowance tends to destroy competition (contested). Cal. Bus. & Prof. Code § 17045.  The UPA "closely parallels" the RPA; the "injury to a competitor" element of section 17045 mirrors the "competitive injury" and "antitrust injury" elements of the RPA.  Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc., 16 Cal. App. 4th 202, 212 (1993); Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1043 (N.D. Cal. 2001).

**Claim 5**:  Elements required to establish a claim for price discrimination in violation of § 17200 of the California Unfair Competition Law:

Plaintiffs base their UCL claim on their RPA and UPA claims, so the same elements must be satisfied (contested as set forth above).  By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats

them as unlawful practices that the unfair competition law makes independently actionable.  Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1043 (N.D. Cal. 2001) (citing Cel–Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)).  Conduct that violates the federal antitrust laws also violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  Beech-Nut Nutrition Corp. v. Gerber Products Co., 69 F. App'x. 350, 353 (9th Cir. 2003) (citing Cel–Tech Comms., Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999)).  Because Plaintiffs' unfair competition claim is predicated only on a claim that Living Essentials unlawfully engaged in price discrimination, Plaintiffs' § 17200 claim fails if the price discrimination claim fails.  Petroleum Sales, Inc. v. Valero Ref. Co., 304 F. App'x 615, 617 (9th Cir. 2008).

c.  In brief, the key evidence Plaintiffs rely on for each of the claims is:

**Claim 1:  Section 2(a) of the Robinson-Patman Act**

The Court has already found that Plaintiffs established the first three elements of the Section 2(a) claim.  (ECF No. 289 at 4 ("the Court finds as follows: (1) the five-hour energy drinks were distributed in interstate commerce; (2) The five-hour energy drinks were of like grade and quality; (3) Defendants discriminated against Plaintiffs in favor of Costco based on price.").)

Competitive Injury

•   Each of the Plaintiffs will testify as to how they lost customers of 5-hour ENERGY® to Costco, and as to their personal observations of customers refusing to buy from them when Costco was receiving an IRC on 5-hour ENERGY®, or their personal experiences in witnessing customers buying 5-Hour ENERGY® from Costco during an IRC event.

•   Plaintiffs' customers will also testify as to how they bought 5-hour Energy from Costco, instead of Plaintiffs, because of the lower pricing.



Actual Competition

- Plaintiffs' customers will also testify as to how they switched their purchasing from Plaintiffs to Costco due to the latter's price advantage.

- Each Plaintiff will testify that it sells 5-hour ENERGY® to retailers such as mom and pop convenience stores, as well as to smaller wholesalers that did not have a direct buying account with Living Essentials, and that it considered Costco to be a competitor for those same customers.

- Each Plaintiff will testify to being told by its customers that they were purchasing 5-hour ENERGY® at Costco because of its lower price.

- Costco's Rule 30(b)(6) representative Larry Fell, who has been a buyer for CBC for 17 years, testified that the CBCs' "target customers" are "the Mom & Pop C-store and the small grocery store."

Actual Injury

- Plaintiffs will testify as to how they lost customers of 5-hour ENERGY® to Costco due to the favorable prices that Costco received.

- Plaintiffs' customers will also testify that they bought 5-hour ENERGY® from Costco because of Costco's price advantage.

**Claim 2:  Section 2(d) of the Robinson-Patman Act**

- will show that they were simply an indirect form of § 2(a) price discrimination.

- If the jury determines that these payments were in fact for services, ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will show that the payments were not made available on proportionally equal terms to Plaintiffs.

### Claim 3:  California Unfair Practices Act

- Plaintiffs' claim under section 17045 of the California Unfair Practices Act (Cal. Bus. & Prof. Code § 17045) also tracks the elements of an RPA Section 2(a) claim.

- Testimony from Plaintiffs that Living Essentials kept its pricing to Costco secret from them.

- Absence of any evidence that Living Essentials disclosed its Costco pricing to anyone other than Costco itself.

### Claim 4:  California Unfair Competition Law

The evidence showing that Living Essentials violated either provision of the RPA or § 17045 of the UPA will show that its conduct was "unlawful" and "unfair."

Defendants

  a.   Defendants plan to pursue the following affirmative defenses:

- First Affirmative Defense: Statute of Limitations
- Second Affirmative Defense: Functional Discounts
- Third Affirmative Defense: Failure to Mitigate
- Fourth Affirmative Defense: Damages Too Speculative and Remote
- Eighth Affirmative Defense: Plaintiffs' Acts or Omissions

b.      The elements required to establish Defendant's counterclaims and affirmative defenses are:

- **<u>First Affirmative Defense</u>: Statute of Limitations**

**Living Essentials' Position**

The statute of limitations applicable to Plaintiffs' RPA claims is four years. 15 U.S.C.A. § 15b; <u>*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*</u>, 2003 WL 21507529, at \*3 (S.D.N.Y. June 30, 2003).

The statute of limitations applicable to Plaintiffs' UCL claims is four years. <u>Cal. Bus. & Prof. Code</u> § 17208.

The statute of limitations applicable to Plaintiffs' UPA claims is three years, with trebled damages being subject to a one-year limitations period. <u>Cal. Bus. & Prof. Code</u> §§ 17070, 17082; <u>*See*</u> <u>*C.H.I.I. v. MTS, Inc.*</u>, 147 Cal. App. 3d. 256 (1983).

Any damages or other remedies stemming from Plaintiffs' claims that arose prior to the start of the respective limitations periods (and any applicable tolling periods) are time-barred.

**Plaintiffs' Position**

An action under the federal antitrust laws must be brought within 4 years after the cause of action accrued. 15 U.S.C. § 15b.

- **<u>Second Affirmative Defense</u>: Functional Discounts**

**Living Essentials' Position**

Plaintiffs bear the burden of proof on functional discounts—that is, Plaintiffs must show by a preponderance of the evidence that Living Essentials' prices to Costco were *not* justified as a functional discount. <u>*See*</u> <u>*Texaco Inc. v. Hasbrouck*</u>, 496 U.S. 543, 571 (1992); <u>*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*</u>, 135 F. Supp. 2d 1031, 1058 (N.D. Cal. 2001); <u>*Gen. Auto Parts Co. v. Genuine Parts Co.*</u>, 2007 WL 704121, at \*6 (D. Idaho Mar. 5, 2007), <u>aff'd</u>, 293 F. App'x 515 (9th

1    Cir. 2008).  Therefore, functional discounts are not technically an affirmative

2    defense.  Nevertheless, to make clear that this issue is not being waived or

3    abandoned, we include this discussion here out of an abundance of caution.

4         The necessary elements to establish that any alleged discounts to Costco

5    were functional discounts are:

6         1. discounts given by Living Essentials to Costco were based on Costco's

7            performance of certain functions for the sale of Living Essentials'

8            product, 5-hour ENERGY®, such as promotion, marketing, and

9            advertising;

10        2. Costco actually performed the promotion, marketing, and advertising

11           services; and

12        3. the amount of the discount was a reasonable reimbursement for the actual

13           functions performed by Costco.

14   "Functional discounts" are "given to a purchaser based on its role in the supplier's

15   distributive system, reflecting, at least in a generalized sense, the services

16   performed by the purchaser for the supplier." _Am. Booksellers_, 135 F. Supp. 2d at

17   1035 (N.D. Cal. 2001) (quoting _Texaco, Inc. v. Hasbrouck_, 496 U.S. 543, 554 n.11

18   (1990).  "A price differential that is reasonably related to the purchaser's costs in

19   performing marketing functions for the supplier, or to the supplier's savings in

20   having those functions performed by the purchaser, is not illegal under the [RPA]."

21   Id.

22   **Plaintiffs' Position**

23        1. The favored purchaser actually performed certain functions or services for

24   the seller's product; and

25        2. The amount of the discount was a reasonable reimbursement for the actual

26   functions performed by the favored purchaser.

27   ABA Model Jury Instructions in Civil Antitrust Cases, 2016 ed. at Chapter 5A,

28   Instruction 11 (citing _Texaco v. Hasbrouck_, 496 U.S. 543, 562 (1990)).

- **<u>Third Affirmative Defense</u>: Failure to Mitigate**

**Living Essentials' Position**

Each of Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate damages. Plaintiffs claim they "lost" millions of dollars in 5-hour ENERGY® sales due to Living Essentials' alleged price discrimination. Plaintiffs did not, however, attempt to mitigate their purported lost sales in any way, such as by doing more advertising, charging a lower mark-up, offering additional services to customers, offering promotional opportunities to Living Essentials, taking advantage of discounts offered by Living Essentials, buying from Costco while the product was at sale pricing, or taking any other reasonable steps to mitigate their purported damages. Plaintiffs also failed to take advantage of all discounts available to them, which would have minimized or eliminated any purported difference in price.

**Plaintiffs' Position**

1. That the plaintiff failed to use reasonable efforts to mitigate damages; and
2. The amount by which damages would have been mitigated.

Ninth Circuit Model Civil Jury Instruction No. 5.3


- **<u>Fourth Affirmative Defense</u>: Damages Too Speculative and Remote**

**Living Essentials' Position**

Each of Plaintiffs' claims are barred, in whole or in part, because the damages sought are too speculative and remote. Plaintiffs claim they "lost" millions of dollars in 5-hour ENERGY® sales due to Living Essentials' alleged price discrimination. There is no evidence to prove how much Plaintiffs actually lost, making their damages claim too speculative, and their expert's damages analysis is similarly flawed (and subject to Living Essentials' motion in limine). There is also no evidence to prove that Plaintiffs' damages were caused by Living Essentials' alleged conduct, making their damages claim too speculative and

remote.

**Plaintiffs' Position**

This is a damages argument, not an affirmative defense. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 05-CV-03459 GAF EX, 2014 WL 5510996, at *2 (C.D. Cal. Oct. 31, 2014) ("'A defense that rebuts plaintiff's prima facie case is a negative defense, not an affirmative defense.'") (citations omitted).

- **Eighth Affirmative Defense**: Plaintiffs' Acts or Omissions

**Living Essentials' Position**

Each of Plaintiffs' claims are barred, in whole or in part, because of their own acts or omissions, including their failure to offer promotional opportunities to Living Essentials (such as IRCs, favorable product placement, or inclusion in a mass mailer), their failure to advertise, their failure to charge a lower mark-up to their customers, their failure to offer additional services to their customers, their failure to pass on discounts to their customers, their failure to buy from Costco while the product was at sale pricing, and their failure to take advantage of all discounts available to them.  Due to these acts and omissions by Plaintiffs, they lost sales that they would not have otherwise lost, and they created a price difference that would not have otherwise existed.

**Plaintiffs' Position**

This is not an affirmative defense to an RPA claim.

c.      In brief, the key evidence Living Essentials relies on for each counterclaim and affirmative defense is:

- **First Affirmative Defense**: Statute of Limitations

**Living Essentials' Position**

During the parties' Local Rule 16-2 conference, Plaintiffs confirmed that they take the position stated in the report of their expert, DeForest McDuff,

regarding the statutes of limitations:



Living Essentials does not dispute these dates.  To the extent Plaintiffs do not alter their stated position on the applicable limitations period, Living Essentials does not anticipate introducing any evidence in this regard.

**Plaintiffs' Position**

Plaintiffs are not seeking damages beyond the periods specified by Dr. McDuff.

- **<u>Second Affirmative Defense</u>: Functional Discounts**

**Living Essentials' Position**

Plaintiffs bear the burden of proof to show by a preponderance of the evidence that Living Essentials' payments/discounts to Costco were *not* justified as a functional discount.  Therefore, functional discounts are not technically an affirmative defense.  Nevertheless, to make clear that this issue is not being waived or abandoned, we include this discussion here out of an abundance of caution.  In support of this defense, Living Essentials will rely on documents, lay witness testimony, and expert testimony showing the promotional nature and value of the services provided by Costco in terms of promotion, marketing, and advertising of 5-

1  hour ENERGY®.  Living Essentials will also rely on Plaintiffs' testimony that

2  Plaintiffs offered no such services or were unable to do so.

3  **Plaintiffs' Position**

4      There is no evidence to support this affirmative defense, as Living Essentials

5  demonstrated in its response to Plaintiffs' Interrogatory no. 8 and testimony from

6  its Rule 30(b)(6) designee.  Plaintiffs have sought to exclude evidence and

7  argument concerning this purported defense that exceed or contradict what Living

8  Essentials provided through interrogatory response and Rule 30(b)(6) testimony.

9      This defense is not legally available because Plaintiffs and Costco occupy the

10  same level of distribution in the marketplace for this product.

11

12      • **Third Affirmative Defense: Failure to Mitigate**

13  **Living Essentials' Position**

14      Based on the documents and testimony in this case, Living Essentials will

15  establish that Plaintiffs did not attempt to mitigate their alleged damages, retain

16  their alleged lost customers, or offer services similar to those that Costco provided

17  to Living Essentials for the promotion, marketing, and advertising of 5-hour

18  ENERGY®.  In addition, the documents and testimony will show that Plaintiffs

19  failed to take advantage of all discounts available to them, which would have

20  minimized or eliminated any purported difference in price.

21  **Plaintiffs' Position**

22      Plaintiffs testimony will show that they did their best to match Costco's

23  prices to earn their customers' business.

24

25      • **Fourth Affirmative Defense: Damages Too Speculative and Remote**

26  **Living Essentials' Position**

27      Living Essentials intends to rely on Plaintiffs' testimony that they are not

28  aware of the specific Costco to which they purportedly lost any specific customer,

FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-1077-CBM-E

and they are not aware of any other factor that might have caused any specific customer to shop at Costco (while simultaneously admitting that such reasons exist).  Living Essentials will also rely on Plaintiffs' ██████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████.[2]

**Plaintiffs' Position**

This is a damages argument, not an affirmative defense.  *See Cassirer v. Thyssen-Bornemisza Collection Found.*, No. 05-CV-03459 GAF EX, 2014 WL 5510996, at *2 (C.D. Cal. Oct. 31, 2014) ("'A defense that rebuts plaintiff's prima facie case is a negative defense, not an affirmative defense.'") (citations omitted).

- **Eighth Affirmative Defense**: Plaintiffs' Acts or Omissions

**Living Essentials' Position**

The evidence will show that Plaintiffs failed to offer promotional opportunities to Living Essentials (such as IRCs, favorable product placement, or inclusion is a mass mailer), failed to advertise, failed to charge a lower mark-up to their customers, failed to offer additional services to their customers, and failed to take advantage of all discounts available to them.  Due to these acts and omissions by Plaintiffs, they lost sales that they would not have otherwise lost, and they created a price difference that would not have otherwise existed.

---

[2] To be clear, it is Plaintiffs' burden to prove damages in a private plaintiff antitrust case, with each Plaintiff needing to prove actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury).  Plaintiffs have, for example, failed to establish actual injury based on ████████████ ████████████ and failed to meet their burden to address a myriad of reasons other than price based on which any alleged customer may have shopped at a Costco location instead of their businesses.

FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-1077-CBM-E

**Plaintiffs' Position**

There is no evidence to support of this purported defense.

## 8.   ISSUES REMAINING TO BE TRIED

In view of the proposed admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

1.    Whether each Plaintiff establishes by a preponderance of the evidence that it "actually competes" with Costco Wholesale Corporation.

2.    Whether each Plaintiff establishes by a preponderance of the evidence that it suffered competitive injury as a result of Living Essentials' price discrimination.

3.    Whether each Plaintiff establishes by a preponderance of the evidence that Living Essentials' price discrimination caused antitrust injury, and if so, in what amount.

4.    Whether each Plaintiff establishes by a preponderance of the evidence that Living Essentials paid Costco Wholesale Corporation for services Costco furnished in conjunction with the processing, handling, sale, or offering for sale of 5-hour ENERGY® that it did not make available to Plaintiffs on proportionally equal terms, in violation of Section 2(d) of the Robinson-Patman Act.

5.    Whether each Plaintiff establishes by a preponderance of the evidence that Living Essentials made secret payments to Costco Wholesale Corporation of rebates or unearned discounts, or secretly extended to Costco special services or privileges not extended to Plaintiffs, and thereby injured Plaintiffs, in violation of Cal. Bus. & Prof. Code § 17045, and if so, the amount of Plaintiffs' damages.

6.    (For the Court):  Whether each Plaintiff establishes by a preponderance of the evidence that Living Essentials' actions violated the unlawful or unfair prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et

- 26 -

seq., and if so, what type of injunction would be appropriate and whether Plaintiffs are entitled to restitution under § 17203, and in what amount?

7.     (For both the jury and the Court):  Whether each Plaintiff seeks damages or other remedies beyond the applicable statute of limitations for any of their claim?

8.     Whether each Plaintiff establishes by a preponderance of the evidence that Living Essentials' payments and discounts to Costco were not justified as functional discounts.

9.     (For both the jury and the Court):  Whether and to what extent each Plaintiff failed to mitigate damages?

10.    (For both the jury and the Court):  Whether each Plaintiff's damages are too speculative and remote?

(For both the jury and the Court):  Whether each Plaintiffs' claims are barred by their own acts or omissions?

**9.     ALL DISCOVERY IS COMPLETE**

All discovery is complete.

**10.     PRETRIAL DISCLOSURES AND EXHIBITS**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1.  (ECF No. 313.)  Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

 Plaintiffs' objections, and the grounds therefor, to certain of Living Essentials' exhibits are noted in **Appendix A**.

Living Essentials' objections, and the grounds therefor, to certain  exhibits are noted in **Appendix B**.

1

2   **11.   <u>WITNESSES</u>**

3      Witness lists of the parties have been filed with the Court.  (ECF Nos. 302,

4   312.)  Only the witnesses identified in the lists will be permitted to testify (other

5   than solely for impeachment).

6      Each party intending to present evidence by way of deposition testimony has

7   marked such depositions in accordance with L.R. 16-2.7.  For this purpose, the

8   following depositions shall be lodged with the Clerk as required by L.R. 32-1:

9   • Deposition designations by Plaintiffs:

10      o Scott Allen

11      o Matthew Dolmage (2016)

12      o Matthew Dolmage (2019)

13      o Larry Fell

14      o Tony Festa

15      o Matthew Giordano

16      o Scott Henderson

17      o Sue LeBeau

18      o Rashid Mamun

19      o Rise Meguiar

20      o Nasir Khan

21      o Steve Ramsey

22      o Kevin Riffle

23      o Sean Riffle

24      o Vince Sullivan

25   • Deposition designations by Living Essentials:

26      o Clark Eaves

27      o Scott Henderson

28      o Sue LeBeau

- o Rise' Meguiar
- o Larry Fell (Coscto Wholesale Corporation)
- o Tony Festa (Innovative Club Partners)
- o Kevin Riffle (Paramount Sales Group)
- o Sean Riffle (Paramount Sales Group)
- o Jawid Wahidi (USW)
- o Mohammad Amini (LAI)
- o Frank Kohanim (LA Top)
- o Michael Pae (YnY)
- o Muhemmad Naveed (CA WS)
- o Wail Paulus (Trepco)
- o Jeff Mansour (SDCC)
- o Maryam Motameni
- o Nasir Khan (Fast & Easy Mart)

## 12. <u>LAW AND MOTION MATTERS</u>

The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

<u>Plaintiffs</u>

- Plaintiffs' Motion *in Limine* No. 1:  To Exclude Testimony And Argument That The Costco IRCs Are Not A Price Discount.

- Plaintiffs' Motion *in Limine* No. 2:  To Exclude Argument and Evidence That Contradict Or Exceed Living Essentials' Rule 30(b)(6) Testimony, Interrogatory Responses, Or Documentary Exhibits Admitted At Trial.

- Plaintiffs' Motion *in Limine* No. 3:  To Exclude Argument and Evidence Concerning The Different Product Configurations Living Essentials Offered To Plaintiffs And Costco, And Its Internal Classifications Of Each Customer.

- Plaintiffs' Motion *in Limine* No. 4:  To Exclude Any Evidence, Argument, or Reference Relating To Other Robinson-Patman Act Litigation Brought By Plaintiffs.

- Plaintiffs' Motion *in Limine* No. 5:  To Preclude Testimony of Living Essentials' Undisclosed Witness Marc Botello.

- Plaintiffs' Motion *in Limine* No. 6:  To Preclude Evidence or Argument Regarding Any Pricing Differences By Plaintiffs.

- Plaintiffs' Motion *in Limine* No. 7:  To Exclude Any Reference To The Treble Damages And Automatic Attorneys' Fees Associated With Antitrust Liability.

Defendants

- Living Essentials' Motion *in Limine* No. I:  The Court should bar each Plaintiff from offering new evidence as to the identity of competing Costcos.

- Living Essentials' Motion *in Limine* No. II:  The Court should exclude any testimony and documents that vaguely refer to unidentified wholesalers supposedly competing with "Costco."

- Living Essentials' Motion *in Limine* No. III:  The Court should preclude Plaintiffs from offering documents, testimony or opinions that attempt to demonstrate competition or competitive injury through improper lay opinions, speculation, and hearsay/double hearsay.

- Living Essentials' Motion *in Limine* No. IV:  The Court should exclude all copies and versions of Plaintiffs' Exhibit 15 and Documents referring to figures in Exhibit 15.

- Living Essentials' Motion *in Limine* No. V:  LA International, San Diego Cash & Carry, and U.S. Wholesale should be barred from offering sales data not previously produced.

FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-1077-CBM-E

• Living Essentials' Motion *in Limine* No. VI:  Plaintiffs should be precluded from offering evidence of diverted sales and lost customers not identified in discovery.

• Living Essentials' Motion *in Limine* No. VII:  Plaintiffs should be precluded from offering into evidence, publishing to the jury or eliciting testimony on Exhibit 3 to the Frazier report.

• Living Essentials' Motion *in Limine* No. VIII:  Plaintiffs should be precluded from introducing complaints made by defendants or its broker regarding poor sales to wholesalers.

• Living Essentials' Motion *in Limine* No. IX:  Plaintiffs should be precluded from calling non-party witnesses who failed to appear for deposition or were not properly disclosed.

• Living Essentials' Motion *in Limine* No. X:  The Court should bar evidence not related to specific competing California Costco locations.

### 13.   **BIFURCATION**

Bifurcation of the following issues for trial is ordered.

Plaintiffs request that following the jury trial on their legal claims, the Court thereafter issue findings of fact and law on their equitable claim under Cal. Bus. & Prof. Code § 17200 et seq.

Defendants do not oppose Plaintiffs request so long as all claims are tried at once (before the jury and the Court) and the parties are not required to conduct a separate bench trial following the jury trial.

### 14.   **FINAL PRETRIAL CONFERENCE ORDER**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of

FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-1077-CBM-E

this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

Dated: _____          By:_____
                                          Honorable Consuelo Marshall
                                          United States District Judge

Approved as to form and content on

Dated:  August 30, 2019          GAW | POE LLP

                                  By: _____
                                          Mark Poe
                                          Attorneys for Plaintiffs

Dated:  August 30, 2019          HAWXHURSTHARRIS LLP

                                  By:    */s/ - Gerald Hawxhurst*
                                          Gerald E. Hawxhurst
                                          Attorneys for Defendants