Gerald E. Hawxhurst (Bar No. 220327)
jerry@hawxhurstllp.com
Arya Towfighi (Bar No. 172418)
arya@hawxhurstllp.com
Sharon G. Gelbart (Bar No. 280760)
sharon@hawxhurstllp.com
HAWXHURST HARRIS LLP
11111 Santa Monica Blvd., Suite 620
Los Angeles, California 90025
Telephone: (310) 893-5150
Facsimile: (310) 893-5195

E. Powell Miller (*pro hac vice*)
epm@millerlawpc.com
Melvin Butch Hollowell (*pro hac vice*)
mbh@millerlawpc.com
Martha J. Olijnyk (*pro hac vice*)
mjo@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852

Attorneys for Defendants
Living Essentials, LLC and Innovation Ventures, LLC

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

U.S. WHOLESALE OUTLET & DISTRIBUTION, INC.; TREPCO IMPORTS & DISTRIBUTION, LTD.; YNY INTERNATIONAL, INC.; EASHOU, INC. (d/b/a SAN DIEGO CASH & CARRY); CALIFORNIA WHOLESALE; SANOOR, INC. (d/b/a/ L.A. TOP DISTRIBUTOR); and L.A. INTERNATIONAL CORPORATION;

Plaintiffs,

v.

LIVING ESSENTIALS, LLC and INNOVATION VENTURES, LLC,

Defendants.

Case No. 2:18-cv-1077-CBM-E

Date: September 24, 2019
Time: 2:00 p.m.
Courtroom: 8B, 8th Floor

**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

**DEFENDANTS' AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Discovery Cutoff: March 1, 2019
Pretrial Conference: Sept. 10, 2019
Trial Date: Oct. 1, 2019

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

**TABLE OF CONTENTS**

I. CLAIMS AND DEFENSES .......... 1

A. Summary of Each Plaintiff's Claims .......... 1

B. Elements Required to Establish Each of Plaintiff's Claims .......... 1

C. Key Evidence in Opposition to Each Plaintiff's Claims .......... 6

D. Summary of Defendants' Affirmative Defenses .......... 16

E. Elements Required to Establish Defendants' Affirmative Defenses .......... 16

F. Key Evidence in Support of Defendants' Affirmative Defenses .......... 20

G. Anticipated Evidentiary Issues .......... 21

H. Issues of Law .......... 23

II. BIFURCATION OF ISSUES .......... 24

III. JURY TRIAL .......... 24

IV. ATTORNEYS' FEES .......... 24

V. ABANDONMENT OF ISSUES .......... 24

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

# TABLE OF AUTHORITIES

Cases

Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031 (N.D. Cal. 2001) ....5, 17, 18

Beech-Nut Nutrition Corp. v. Gerber Products Co., 69 F. App'x. 350 (9th Cir. 2003)....5

C.H.I.I. v. MTS, Inc., 147 Cal. App. 3d. 256 (1983)....16

Camarda v. Snapple Distrib., Inc., 346 F. App'x 690 (2d Cir. 2009)....2

Cardoza v. Tann, 2015 WL 6437376 (E.D. Ca. Oct. 22, 2015) ....21

Cel–Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163 (1999)....5

Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc., 16 Cal. App. 4th 202 (1993)....5

Drug Mart Pharm. Corp. v. Am. Home Prods. Corp., 472 F. Supp. 2d 385 (E.D.N.Y. 2007)....3

England v. Chrysler Corp., 493 F.2d 269 (9th Cir. 1974)....4

Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191 (3d Cir. 2010)....2, 4

Fred Meyer, Inc. v. FTC, 359 F.2d 351 (9th Cir. 1966)....2

Gen. Auto Parts Co. v. Genuine Parts Co., 2007 WL 704121 (D. Idaho Mar. 5, 2007), aff'd, 293 F. App'x 515 (9th Cir. 2008)....17

Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n, 446 U.S. 318 (1980) ....15

Great Am. Ins. Co. v. Wexler Ins. Agency Inc., 2000 WL 36732271 (C.D. Cal. Apr. 19, 2000)....15

J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557 (1981) ....2

Petroleum Sales, Inc. v. Valero Ref. Co., 304 F. App'x 615 (9th Cir. 2008) ....6

Texaco, Inc. v. Hasbrouck, 496 U.S. 543 (1990) .................... 17, 18

Theme Promotions, Inc. v. News Am. Mktg FSI, 546 F.3d 991 (9th Cir. 2008) .................... 15

Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC, No. 5:18-cv-2605 (C.D. Cal.) .................... 23

United Magazine Co. v. Murdoch Magazines Distrib., Inc., 393 F. Supp. 2d 199 (S.D.N.Y. 2005) .................... 3

Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164 (2006) .................... 2, 4, 21, 22

Woodman's Food Market, Inc. v. Clorox Co., 833 F.3d 743 (7th Cir. 2016) .................... 2, 4

Statutes

15 U.S.C. § 13 .................... 1, 2, 4

Cal. Bus. & Prof. Code § 17045 .................... 1, 5, 14

Cal. Bus. & Prof. Code § 17200 .................... 1, 5, 16

Rules

Fed. R. Civ. P. 26 .................... 22

Fed. R. Civ. P. 37 .................... 22

Fed. R. Evid. 401 .................... 21, 22

Fed. R. Evid. 402 .................... 21, 22

Fed. R. Evid. 403 .................... 21, 22

Fed. R. Evid. 602 .................... 21, 22

Fed. R. Evid. 701 .................... 21, 22

Fed. R. Evid. 702 .................... 22

Fed. R. Evid. 801 .................... 22

Fed. R. Evid. 802 .................... 22

Fed. R. Evid. 803 .................... 22

Fed. R. Evid. 805 .................... 22

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

Fed. R. Evid. 807 .................................................................................... 22

Fed. R. Evid. 901 .................................................................................... 22

Fed. R. Evid.703 .................................................................................... 22

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

- iv -
DEFENDANTS' AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

Pursuant to Local Rule 16-4, Defendants Living Essentials, LLC and Innovation Ventures, LLC ("Living Essentials") hereby submit this Memorandum of Contentions of Fact and Law in advance of the Final Pretrial Conference.

# I. CLAIMS AND DEFENSES

## A. Summary of Each Plaintiff's Claims

**Claim 1**: Each Plaintiff claims that Living Essentials engaged in discrimination in price in violation of Section (a) of the Robinson Patman Act, 15 U.S.C. § 13(a).

**Claim 2**: Each Plaintiff claims that Living Essentials engaged in discrimination in payment for services or facilities in violation of Section (d) of the Robinson Patman Act, 15 U.S.C. § 13(d).

**Claim 3**: Each Plaintiff claims that Living Essentials engaged in discrimination in furnishing services or facilities in violation of Section (e) of the Robinson Patman Act, 15 U.S.C. § 13(e).

**Claim 4**: Each Plaintiff claims that Living Essentials engaged in price discrimination in violation of the California Unfair Practices Act, Cal. Bus. & Prof. Code § 17045.

**Claim 5**: Each Plaintiff claims that Living Essentials engaged in price discrimination in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

## B. Elements Required to Establish Each of Plaintiff's Claims

**Claim 1**: Elements required to establish a claim for discrimination in price in violation of Section (a) of the Robinson Patman Act:

1) Sales made in interstate commerce (not contested);

2) Commodities of like grade and quality (not contested);

3) The sales being compared were made at about the same time (contested);

3) Price difference between each Plaintiff (the alleged disfavored

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

purchaser) and the alleged favored purchaser (contested)[1]; and

4) Injury to competition (contested):

a. actual competition between a favored purchaser and each Plaintiff for the same customers and the same dollar; and

b. competitive injury (either direct evidence of diverted sales or profits from each Plaintiff to an identified favored purchaser or indirect evidence showing the identified favored purchaser received a significant price reduction over a substantial period of time); and

5) Damages: in a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury, which means actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover damages. 15 U.S.C. § 13(a); Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164 (2006); Woodman's Food Market, Inc. v. Clorox Co., 833 F.3d 743 (7th Cir. 2016); Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191 (3d Cir. 2010). See also J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 562 (1981) ("plaintiff must, of course, be able to show a causal connection between the price discrimination in violation of the Act and the injury suffered"); Camarda v. Snapple Distrib., Inc., 346 F. App'x 690, 693 (2d Cir. 2009) (granting summary judgment for defendants where plaintiffs failed to "account[] for other factors that may have

---

[1] On August 7, 2019, the Court, in its Order re: Motions for Summary Judgement (Dkt. 289, "MSJ Order") ruled that there is a price difference for 5-hour ENERGY® between Plaintiffs and Costco, the alleged favored purchaser. Living Essentials includes this issue in the event of a change in circumstances and/or for preservation of the record and appeal purposes. Living Essentials believes that Fred Meyer, Inc. v. FTC, 359 F.2d 351 (9th Cir. 1966) does not apply here for several reasons, including that the IRCs are not product discounts to Costco, they are not linked to Costco's purchases, they do not lower Costco's cost of goods, they are redeemed and paid directly to Costco's customers, they should not be analyzed under § 2(a) pursuant to the Fred Meyer Guides (see, e.g., 16 C.F.R. § 240.2), and because Fred Meyer was primarily a Section 2(f) case against the buyer rather than a 2(a) or 2(d) claim against the sellers or manufacturers of the products at issue.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

caused their businesses to decline" and therefore could not prove causation); United Magazine Co. v. Murdoch Magazines Distrib., Inc., 393 F. Supp. 2d 199, 210-12 (S.D.N.Y. 2005) (not enough to demonstrate plaintiff paid more; must come forward with evidence that price discrimination had detrimental effect on business, not just abstract conclusions, and that lost sales or profits were result of discrimination and not unrelated factors).

For purposes of RPA secondary-line cases (i.e., price discrimination that purports to injure competition among the seller's customers), antitrust injury is the competitor's unfair competitive edge that is used to attract sales or profits from the plaintiff. In other words, the plaintiff's injury must be traced to the competitor's competitive use of its price advantage. Drug Mart Pharm. Corp. v. Am. Home Prods. Corp., 472 F. Supp. 2d 385, 424 (E.D.N.Y. 2007). "If the price discrimination…was the cause of the plaintiffs' injury, the plaintiffs should be able to match up their losses with gains to the favored competitors." Id. at 424-25.

**Claim 2**: Elements required to establish a claim for discrimination in payment for services or facilities in violation of Section (d) of the Robinson Patman Act:

1) Sales made in interstate commerce (not contested);

2) Commodities of like grade and quality (not contested);

3) Actual competition between the alleged favored purchaser and each Plaintiff (the alleged disfavored purchaser) for the same customers and the same dollar (contested);

4) Living Essentials paid the alleged favored purchaser for services or facilities (promotional allowances) to be used primarily to promote the resale of 5-hour ENERGY® that were not available on proportionately equal terms to each Plaintiff (contested); and

5) Damages: in a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury, which means actual injury and causation (i.e., the

alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover damages. 15 U.S.C. § 13(d); Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164 (2006); Woodman's Food Market, Inc. v. Clorox Co., 833 F.3d 743 (7th Cir. 2016); Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191 (3d Cir. 2010). See also England v. Chrysler Corp., 493 F.2d 269, 271-72 (9th Cir. 1974) (under section 2(d), "the advantaged and disadvantaged parties must be shown to be competing customers of the giver in order for there to be discrimination").

**Claim 3**: Elements required to establish a claim for discrimination in furnishing services or facilities in violation of Section (e) of the Robinson Patman Act:

1) Sales made in interstate commerce (not contested);

2) Commodities of like grade and quality (not contested);

3) Actual competition between the alleged favored purchaser and each Plaintiff (the alleged disfavored purchaser) for the same customers and the same dollar (contested);

4) Living Essentials furnished services or facilities (promotional services) to Costco to be used primarily to promote the resale of 5-hour ENERGY® that were not available on proportionately equal terms to each Plaintiff (contested); and

5) Damages: in a private plaintiff antitrust case, each Plaintiff must also prove antitrust injury, which means actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury) (contested). Antitrust injury must be established in order to recover damages. 15 U.S.C. § 13(e); Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164 (2006); Woodman's Food Market, Inc. v. Clorox Co., 833 F.3d 743 (7th Cir. 2016); Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191 (3d Cir. 2010). See also England v. Chrysler Corp., 493 F.2d 269, 271-72 (9th Cir. 1974) (under section 2(e),

HAWXHURST HARRIS LLP
1111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

"the advantaged and disadvantaged parties must be shown to be competing customers of the giver in order for there to be discrimination").

**Claim 4**: Elements required to establish a claim for price discrimination in violation of § 17045 of the California Unfair Practices Act:

1) Secret payment or allowance of rebates, refunds, commissions, or unearned discounts from Living Essentials to certain identified purchasers (contested);

2) Injury to a competitor (contested); and

3) The payment or allowance tends to destroy competition (contested).

Cal. Bus. & Prof. Code § 17045. The UPA "closely parallels" the RPA; the "injury to a competitor" element of section 17045 mirrors the "competitive injury" and "antitrust injury" elements of the RPA. Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc., 16 Cal. App. 4th 202, 212 (1993); Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1043 (N.D. Cal. 2001).

**Claim 5**: Elements required to establish a claim for price discrimination in violation of § 17200 of the California Unfair Competition Law:

Plaintiffs base their UCL claim on their RPA and UPA claims, so the same elements must be satisfied (contested as set forth above). By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable. Am. Booksellers Ass'n v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1043 (N.D. Cal. 2001) (citing Cel–Tech Comms., Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)). Conduct that violates the federal antitrust laws also violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Beech-Nut Nutrition Corp. v. Gerber Products Co., 69 F. App'x. 350, 353 (9th Cir. 2003) (citing Cel–Tech Comms., Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999)). Because Plaintiffs' unfair competition claim is predicated only on a claim that Living Essentials unlawfully engaged in price discrimination, Plaintiffs'

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

§ 17200 claim fails if the price discrimination claim fails. Petroleum Sales, Inc. v. Valero Ref. Co., 304 F. App'x 615, 617 (9th Cir. 2008).

### C. Key Evidence in Opposition to Each Plaintiff's Claims

**Claim 1**: Evidence in opposition to claim of price discrimination in violation of Section (a) of the Robinson Patman Act:

1) No Reasonably Contemporaneous Sales. The evidence shows that the sales to Costco on which Plaintiffs rely were not reasonably contemporaneous because regular Costco stores did not sell 5-hour ENERGY® for large swaths of the relevant period and neither regular Costco stores nor Costco Business Centers consistently offered the IRCs upon which Plaintiffs rely to establish a price difference, nor did all Costco locations receive the alleged promotional payments on which Plaintiffs base their price discrimination claims.

2) No Price Difference.[2] The evidence shows there was no difference—and therefore no discrimination—in the price of 5-hour ENERGY® for Costco and Plaintiffs after taking available discounts into account:

a. The evidence (documents and testimony[3]) establishes that Living Essentials sells 5-hour ENERGY® 

[2] See footnote 1.

[3] Living Essentials' Exhibit List and Witness List are filed concurrently herewith.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

b. The *list* price for Plaintiffs

c. The *list* price for Costco

d. Recognizing there was no real price difference, Plaintiffs try to reduce Costco's actual net price by arguing that promotional payments paid by Living Essentials to Costco to promote and advertise 5-hour ENERGY® constitute reductions in the price it pays Living Essentials for the product and, therefore, price discrimination. However, the

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

evidence shows that these payments were not price reductions, but were, in fact, legitimate promotional payments separate and apart from the sale of the product to Costco to help promote Living Essentials' products for resale to end consumers. Specifically, Living Essentials paid Costco for favorable product placement of 5-hour ENERGY® at the endcaps (at the end of each aisle) and at the fence (near the store entrance) where products can be more prominently displayed to drive sales.

e. Plaintiffs also try to reduce Costco's net price by the amount of coupon discounts offered to Costco customers called Instant Redeemable Coupons ("IRCs"), which are manufacturer's rebates from Living Essentials to the end customers, not Costco.[4] However, in addition to also being a promotional payment, this amount is not even properly attributable to Costco. Unlike Plaintiffs, Costco allows its customers to redeem the rebate at the register, advancing the rebate amount to the customer and then seeking reimbursement from Living Essentials. Rather than act as a price reduction for Costco, the IRC actually costs Costco money until it is subsequently reimbursed. The end result is that Costco is simply put back into the position it would have been in had the IRC never taken place. Costco therefore never realizes a discount in price; only the consumer does (Costco's net amount paid for the club pack never changes, and the volume of 5-hour ENERGY® bought or sold by Costco is irrelevant, i.e., the rebate

[4] The Court's MSJ Order ruled that IRCs constitute a price discount to Costco. Living Essentials includes this issue in the event of a change in circumstances and/or for preservation of the record and appeal purposes. As the Fred Meyer Guides show, rebates relating to the resale of goods (i.e., not the initial sale between the seller and the customer) implicate Section 2(d) (16 C.F.R. § 240.2); by extension, such rebates do not support a Section 2(a) claim, which relates to the initial sale between the seller and the customer.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

amount does not change or depend on whether a particular quantity is purchased or not). As a further indication that the IRC is a post-sale rebate to the consumer (not Costco), the consumer pays sales tax on the full, pre-coupon price, not the discounted price. According to the California State Board of Equalization Publication 113, "Manufacturer coupons are paper or paperless coupons allowing customers to receive a percentage or amount off the advertised selling price when purchasing the manufacturer's product. If you accept manufacturer coupons, amounts paid by manufacturers to reimburse you for the value of the manufacturer's coupons are included in your total taxable sales when the sale is subject to tax." Even if IRCs were to be considered price discounts to Costco, Plaintiffs would have the burden of showing how much of the amount paid for IRCs was attributable to a promotional payment to Costco (for inclusion in Costco's IRC mass-mailer and/or favorable product placement) for which Living Essentials received value and how much constituted a purported price discount to Costco.

f. The net prices to Costco were functionally or practically available to Plaintiffs because the evidence shows that if Plaintiffs had taken advantage of all discounts or prices available, they would have had an equivalent price. Plaintiffs are required to prove that an equivalent price or a discount or promotional program is not functionally available to them.

3) No Actual Competition. The evidence shows that Plaintiffs are cash and carry operations that are not in actual competition with Costco:

a. Plaintiffs' testimony confirms that they are cash and carry wholesalers who sell primarily to retail convenience stores, who in turn sell to consumers. Costco, on the other hand, is a membership-based

club store that is primarily a retailer selling general merchandise directly to consumers. Costco is on the same level in the distribution chain as Plaintiffs' customers, not Plaintiffs. While some Costco locations are intended for small business customers (Costco Business Centers) and, therefore, may sell to retailers, it is a small percentage of Costco's overall operations (approximately 3% of Costco locations are Costco Business Centers).

b. Much like a supermarket, Costco locations will have products on display in aisles on shelves with prices prominently marked, and shoppers will walk up and down the aisles perusing the merchandise. Also like a supermarket, Costco offers favorable product placement (i.e., endcaps and fences) where products can be displayed more prominently to drive sales. Plaintiffs, on the other hand, operate more like warehouses from which their convenience store clients can pick up particular goods they have ordered to re-stock their inventory—they are not typically walk-in customers strolling up and down aisles, and therefore, there are no options for—and no utility to—more prominent product displays. Also like a supermarket, Costco allows direct consumers (i.e., its member shoppers) to redeem manufacturer coupons to reduce the consumer's cost to purchase a particular product.

c. Plaintiffs and Costco have different business models and customers. Plaintiffs, as convenience store wholesalers, tailor their products and services to their convenience store customers. Plaintiffs focus on stocking to meet the resale needs of convenience stores, liquor stores, and smoke shops, and for that reason, they primarily sell tobacco and tobacco accessories. In addition, by way of example and not limitation, Plaintiffs carry up to the full suite of 5-hour ENERGY® flavors and sell the product in different size configurations, including

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

racks and displays needed by convenience stores to display and sell the various flavors of 5-hour ENERGY®. Plaintiffs offer services such as store credit valued by their customers. On the other hand, Costco only sells a limited number of flavors in 24-bottle "Club Packs" and caters to end consumers, including to a lesser extent—in the case of Costco Business Centers— all small businesses (not just convenience stores). Costco does not offer store credit and does not sell the racks and displays needed by many resellers of 5-hour ENERGY®, such as Plaintiffs' convenience store clients.

4) No Competitive Injury. Plaintiffs cannot show more than de minimis direct evidence of diverted sales or profits from each Plaintiff to a specific identified Costco location – the few customers and receipts they can muster are insufficient and do not establish that the sales in question were diverted from any Plaintiff. Nor can Plaintiffs establish indirect evidence showing that a specific identified Costco location received a significant price reduction over a substantial period of time – the evidence shows that regular Costco stores did not sell 5-hour ENERGY® for large swaths of the relevant period and neither regular Costco stores nor Costco Business Centers consistently offered the IRCs upon which Plaintiffs rely to establish a price difference, nor did all Costco locations receive the alleged promotional payments on which Plaintiffs base their price discrimination claims.

5) Functional Discount. Even if the promotional payments by Living Essentials were considered discounts to Costco, they would qualify as functional discounts given by Living Essentials to Costco based on Costco's performance of certain functions for the resale of Living Essentials' product, 5-hour ENERGY®, such as promotion, marketing, and advertising. Since Costco actually performed the promotion, marketing, and advertising services, and the amount of the discount was a reasonable reimbursement for

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

the actual functions performed, the discounts would not constitute price discrimination. Plaintiffs have the burden of proof to show by a preponderance of the evidence that Living Essentials' prices to Costco were *not* justified as a functional discount.

6) <u>No Antitrust Injury, No Damages</u>. The evidence shows that each Plaintiff cannot establish the individualized antitrust injury required to prevail on its claims. It is not enough for each Plaintiff to demonstrate that it paid more for 5-hour ENERGY® than Costco; each Plaintiff must come forward with evidence that the alleged price discrimination had a detrimental effect on that Plaintiff's business and on the market in general. Plaintiffs cannot rely on their—[redacted]—abstract or aggregated conclusions. Each Plaintiff must demonstrate that it lost sales or profits as a result of the alleged discrimination and that the losses were not attributable to other unrelated factors. No Plaintiff can meet this burden. No Plaintiffs can match up any purported losses with any purported gains to a favored competitor.

The evidence shows several factors unrelated to the price of 5-hour ENERGY® that caused or contributed to Plaintiffs' claimed losses. Plaintiffs acknowledge that their customers choose where to buy products based on many factors other than price, including convenience, familiarity, customer service, credit terms, and others. Plaintiffs' customers shop to replenish their inventories, not to buy single products, and 5-hour ENERGY® is just one product that comprises the basket of goods that Plaintiffs' customers purchase. To help drive this point home, several Plaintiffs have filed lawsuits similar to this one where they allege *other* manufacturers, such as the manufacturers of Clear Eyes eyedrops and Arizona Iced Tea, are engaging in price discrimination causing them to lose those sales as well. Plaintiffs have not and cannot account for or distinguish between "lost" customers who purchased Clear Eyes eyedrops or Arizona Iced Tea and also purchased

HAWXHURST HARRIS LLP
1111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

5-hour ENERGY® in the same transaction, which makes it unclear which product (if any) was the cause of the alleged lost sale.

The evidence also shows [redacted], which would have affected Plaintiffs and Costco alike and would be a factor that contributed to Plaintiffs' alleged lost sales having nothing to do with the price of 5-hour ENERGY®.

Each Plaintiff bears the burden of proving its damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. Plaintiffs' alleged injuries were caused entirely by factors other than any alleged antitrust violation, but even if that were not the case, there is no reasonable basis to apportion Plaintiffs' alleged injuries between lawful and unlawful causes, or that apportionment could only be accomplished through speculation or guesswork, which would preclude them from recovering any damages.

**Claim 2**: Evidence in opposition to claim of discrimination in payment for services or facilities in violation of Section (d) of the Robinson Patman Act:

1) Plaintiffs Claim the Promotional Allowances were Price Reductions. Plaintiffs take the erroneous position that any amounts paid by Living Essentials for promotional purposes, such as for product placement of 5-hour ENERGY® at Costco's endcaps and fences or for IRCs and the inclusion of 5-hour ENERGY® in Costco's advertising mailer, should count as price reductions and therefore support a claim for direct price discrimination under Section (a) of the Robinson-Patman Act (see above). Direct price discrimination, however, does not give rise to a claim under Section (d), so based on Plaintiffs' theory of the case, no claim lies under Section (d).

2) Plaintiffs Did Not and Could Not Offer Promotions. While Plaintiffs could have—but failed to—argue that these promotional payments should be analyzed solely under Section (d), there is a clear reason they did not: there

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

can be no discrimination for payment for services where Plaintiffs do not offer the same services. The evidence shows that the promotional opportunities provided by Costco were not mandatory terms of Costco's purchase of 5-hour ENERGY®, but voluntary promotional opportunities available to manufacturers who sold products to Costco. Plaintiffs do not offer such promotional opportunities; they do not have endcaps, or fences, or widely disseminated advertising mailers. And they did not sell directly to consumers, so they do not offer IRCs, which are manufacturer coupons intended for consumers, and they admit they would not pass on any savings they might get to their retail clients. Without the ability to offer such services, Living Essentials was unable to pay Plaintiffs for such promotional services on a proportional basis. Therefore, no Section (d) claim would lie.

3) No Actual Competition. Same as for Claim 1 above.

4) No Antitrust Injury, No Damages. Same as for Claim 1 above.

**Claim 3**: Evidence in opposition to claim of discrimination in furnishing services or facilities violation of Section (e) of the Robinson Patman Act:

1) No Evidence. There is no evidence that Living Essentials furnished Costco with any services or facilities for the processing or sale of 5-hour ENERGY®. This claim should be abandoned by Plaintiffs.

2) No Actual Competition. Same as for Claim 1 above.

3) No Antitrust Injury, No Damages. Same as for Claim 1 above.

**Claim 4**: Evidence in opposition to claim of price discrimination in violation of § 17045 of the California Unfair Practices Act:

1) Same Evidence as RPA Claim. Plaintiffs' Unfair Practices Act claim relies entirely on the same allegations and evidence as their Robinson-Patman Act claims. Therefore, the same evidence that establishes that Living Essentials did not violate or have any recoverable damages under the

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

Robinson-Patman Act also establishes that Living Essentials did not violate or have any recoverable damages under the Unfair Practices Act.

2) Not Secret. The UPA claim fails for the additional reason that the promotional allowances paid by Living Essentials to Costco were hardly a secret or undisclosed. The purpose of endcap and fence placement is to prominently display your product to the shopping public, which is directly contrary to keeping the product placement arrangement a secret. Similarly, the IRCs are advertised in Costco's mass-mailers and at the point of sale, so they are not kept secret. The fact that Plaintiffs claim that they and their customers were aware of and took advantage of the coupons would obviate any claim that they were undisclosed.

3) Functional Classifications. Living Essentials claims that any alleged secret rebates or allowances were within the law because they applied to different classes of customers, and the evidence and testimony will show that [REDACTED].

4) No Duplicative Damages. Plaintiffs as a matter of law cannot recover the same damages for the same alleged harms under multiple theories of recovery. "The general rule regarding damages is simply that a plaintiff may not receive a double recovery for the same wrong." Great Am. Ins. Co. v. Wexler Ins. Agency Inc., 2000 WL 36732271, *5 (C.D. Cal. Apr. 19, 2000); see also Theme Promotions, Inc. v. News Am. Mktg FSI, 546 F.3d 991, 1005 (9th Cir. 2008) (recognizing double recovery rule in antitrust context); Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 333 (1980) ("It … goes without saying that the courts can and should preclude double recovery…."); Judicial Council of California, Civil Jury Instructions, 2019 ed., CACI 3934 (damages may be awarded only once, regardless of the number of legal theories alleged).

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

<u>**Claim 5**</u>: Evidence in opposition to claim of price discrimination in violation of § 17200 of the California Unfair Competition Law:

1) <u>Same Evidence as RPA Claim</u>. Plaintiffs' Unfair Competition Law claim relies entirely on the same allegations and evidence as their Robinson-Patman Act claims. Therefore, the same evidence that establishes that Living Essentials did not violate the Robinson-Patman Act also establishes that Living Essentials did not violate the Unfair Competition Law.

2) <u>No Duplicative Damages</u>. Same as for Claim 4 above.

**D. Summary of Defendants' Affirmative Defenses**

<u>First Affirmative Defense</u>: Statute of Limitations

<u>Second Affirmative Defense</u>: Functional Discounts

<u>Third Affirmative Defense</u>: Failure to Mitigate

<u>Fourth Affirmative Defense</u>: Damages Too Speculative and Remote

<u>Fifth Affirmative Defense</u>: Good Faith/Justification

<u>Sixth Affirmative Defense</u>: Failure to State a Claim

<u>Seventh Affirmative Defense</u>: Fault of Third Parties

<u>Eighth Affirmative Defense</u>: Plaintiffs' Acts or Omissions

**E. Elements Required to Establish Defendants' Affirmative Defenses**

<u>First Affirmative Defense</u>: Statute of Limitations:

To the extent Plaintiffs seek to assert any damages or other remedies beyond the applicable statute of limitations for any of their claims, Living Essentials asserts a statute of limitations defense. The statute of limitations applicable to Plaintiffs' RPA and UCL claims is four years. The statute of limitations applicable to Plaintiffs' UPA claims is three years. <u>See</u> <u>C.H.I.I. v. MTS, Inc.</u>, 147 Cal. App. 3d. 256 (1983). Any damages or other remedies stemming from Plaintiffs' claims that arose prior to their respective statute of limitations dates (and any applicable tolling periods) are time-barred.

Based on the report of Plaintiffs' expert, DeForest McDuff, Plaintiffs have taken the following position on the applicable time periods:

Living Essentials does not dispute these dates and will abandon its statute of limitations defense if Plaintiffs do not claim damages beyond these dates.

Second Affirmative Defense: Functional Discounts:

As discussed above, Plaintiffs bear the burden of proof on functional discounts—that is, Plaintiffs must show by a preponderance of the evidence that Living Essentials' prices to Costco were *not* justified as a functional discount. See Texaco Inc. v. Hasbrouck, 496 U.S. 543, 571 (1992); Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc., 135 F. Supp. 2d 1031, 1058 (N.D. Cal. 2001); Gen. Auto Parts Co. v. Genuine Parts Co., 2007 WL 704121, at *6 (D. Idaho Mar. 5, 2007), aff'd, 293 F. App'x 515 (9th Cir. 2008). Therefore, functional discounts are not technically an affirmative defense. Nevertheless, to make clear that this issue is not being waived or abandoned, we include this discussion here out of an abundance of caution.

The necessary elements to establish that any alleged discounts to Costco were functional discounts are:

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

HAWXHURST HARRIS LLP
1111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

1) discounts given by Living Essentials to Costco based on Costco's performance of certain functions for the sale of Living Essentials' product, 5-hour ENERGY®, such as promotion, marketing, and advertising;

2) Costco actually performed the promotion, marketing, and advertising services; and

3) the amount of the discount was a reasonable reimbursement for the actual functions performed.

"Functional discounts" are "given to a purchaser based on its role in the supplier's distributive system, reflecting, at least in a generalized sense, the services performed by the purchaser for the supplier." Am. Booksellers, 135 F. Supp. 2d at 1035 (N.D. Cal. 2001) (quoting Texaco, Inc. v. Hasbrouck, 496 U.S. 543, 554 n.11 (1990)). "A price differential that is reasonably related to the purchaser's costs in performing marketing functions for the supplier, or to the supplier's savings in having those functions performed by the purchaser, is not illegal under the [RPA]." Id. The promotional payments Living Essentials provided to Costco Wholesale Corporation were justified as functional discounts. Living Essentials provided payments to Costco in exchange for the performance of valuable promotion, marketing, and advertising services for 5-hour ENERGY®.

Third Affirmative Defense: Failure to Mitigate:

Each of Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate damages. Plaintiffs claim they "lost" millions of dollars in 5-hour ENERGY® sales due to Living Essentials' alleged price discrimination. Plaintiffs did not, however, attempt to mitigate their purported lost sales in any way, such as by doing more advertising, charging a lower mark-up, offering additional services to customers, offering promotional opportunities to Living Essentials, taking advantage of discounts offered by Living Essentials, or taking any other reasonable steps to mitigate their purported damages. Plaintiffs also failed to take advantage of all

discounts available to them, which would have minimized or eliminated any purported difference in price.

Each Plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. Living Essentials has the burden of proving by a preponderance of the evidence:

1. that Plaintiffs failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.

NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS 5.3.

<u>Fourth Affirmative Defense</u>: Damages Too Speculative and Remote:

Each of Plaintiffs' claims are barred, in whole or in part, because the damages sought are too speculative and remote. Plaintiffs claim they "lost" millions of dollars in 5-hour ENERGY® sales due to Living Essentials' alleged price discrimination. There is no evidence to prove how much Plaintiffs actually lost, making their damages claim too speculative, and [redacted] (and subject to Living Essentials' motion in limine). There is also no evidence to prove that Plaintiffs' damages were caused by Living Essentials' alleged conduct, making their damages claim too remote.

<u>Eighth Affirmative Defense</u>: Plaintiffs' Acts or Omissions:

Each of Plaintiffs' claims are barred, in whole or in part, because of their own acts or omissions, including their failure to offer promotional opportunities to Living Essentials (such as IRCs, favorable product placement, or inclusion in a mass mailer), their failure to advertise, their failure to charge a lower mark-up to their customers, their failure to offer additional services to their customers, their failure to pass on discounts to their customers, and their failure to take advantage of all discounts available to them. Due to these acts and omissions by Plaintiffs, they lost sales that they would not have otherwise lost, and they created a price difference that would not have otherwise existed.

HAWXHURST HARRIS LLP
1111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

**F. Key Evidence in Support of Defendants' Affirmative Defenses**

First Affirmative Defense: Statute of Limitations. To the extent Plaintiffs do not alter their stated position on the applicable limitations period, Living Essentials does not anticipate introducing any evidence in this regard.

Second Affirmative Defense: Functional Discounts. Plaintiffs bear the burden of proof to show by a preponderance of the evidence that Living Essentials' prices to Costco were *not* justified as a functional discount. Therefore, functional discounts are not technically an affirmative defense. Nevertheless, to make clear that this issue is not being waived or abandoned, we include this discussion here out of an abundance of caution. In support of this defense, Living Essentials will rely on documents, testimony, and expert testimony showing the promotional nature and value of the services provided by Costco in terms of promotion, marketing, and advertising. Living Essentials will also rely on Plaintiffs' testimony that Plaintiffs offered no such services.

Third Affirmative Defense: Failure to Mitigate. Based on the documents and testimony in this case, Living Essentials will establish that Plaintiffs did not attempt to mitigate their alleged damages, retain their alleged lost customers, or offer services similar to those that Costco provided to Living Essentials for the promotion, marketing, and advertising of 5-hour ENERGY®. In addition, the documents and testimony will show that Plaintiffs failed to take advantage of all discounts available to them, which would have minimized or eliminated any purported difference in price.

Fourth Affirmative Defense: Damages Too Speculative and Remote. Living Essentials intends to rely on Plaintiffs' testimony that they are not aware of the specific Costco to which they purportedly lost any specific customer, and they are not aware of any other factor that might have caused any specific customer to shop at Costco (while simultaneously admitting that such reasons exist). Living Essentials will also rely on Plaintiffs'

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

[5]

Eighth Affirmative Defense: Plaintiffs' Acts or Omissions. The evidence will show that Plaintiffs failed to offer promotional opportunities to Living Essentials (such as IRCs, favorable product placement, or inclusion in a mass mailer), failed to advertise, failed to charge a lower mark-up to their customers, failed to offer additional services to their customers, and failed to take advantage of all discounts available to them. Due to these acts and omissions by Plaintiffs, they lost sales that they would not have otherwise lost, and they created a price difference that would not have otherwise existed.

**G. Anticipated Evidentiary Issues**

Concurrently with the original version of this Memorandum, Living Essentials filed a motion in limine with respect to the following evidentiary issues:

1) The Court should bar each Plaintiff from offering new evidence as to the identity of competing Costcos. Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc., 546 U.S. 164, 178 (2006); Cardoza v. Tann, 2015 WL 6437376, *2 (E.D. Ca. Oct. 22, 2015); Fed. R. Evid. 401, 402, 403, 701(a).

2) The Court should exclude any testimony and documents that vaguely refer to unidentified wholesalers supposedly competing with "Costco." FRE 401, 402, 403, 602, 701.

3) The Court should preclude Plaintiffs from offering documents, testimony or opinions that attempt to demonstrate competition or competitive

[5] To be clear, it is Plaintiffs' burden to prove damages in a private plaintiff antitrust case, with each Plaintiff needing to prove actual injury and causation (i.e., the alleged antitrust violation was a material cause of each Plaintiff's injury). Plaintiffs have, for example, failed to establish actual injury based on the de minimis lost customers identified and failed to meet their burden to address a myriad of reasons other than price based on which any alleged customer may have shopped at a Costco location instead of their businesses.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

injury through improper lay opinions, speculation, and hearsay/double hearsay. Fed. R. Evid. 701, 702, 801, 802, 805.

4) The Court should exclude all copies and versions of Plaintiffs' Exhibit 15 and documents referring to figures in Exhibit 15, including all versions thereof, as hearsay, irrelevant, and prejudicial or confusing. Fed. R. Evid. 802, 803, 805, 807, 402, 403.

5) LA International, San Diego Cash & Carry, and U.S. Wholesale should be barred from introducing or relying on unproduced sales data; arguing such data is missing; or receiving damages for periods for which they did not produce data. Fed. R. Civ. P. 26 and 37(c)(1); Fed. R. Evid. 403.

6) Plaintiffs should be precluded from offering evidence of diverted sales and lost customers not identified in discovery. <u>Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.</u>, 546 U.S. 164, 178 (2006); Fed. R. Civ. P. 26 and 37(c)(1); Fed. R. Evid. 403.

7) Plaintiffs should be precluded from offering into evidence, publishing to the jury, or eliciting testimony on Exhibit 3 to the expert report of Gary Frazier, PhD, as the maps constitute hearsay, contain hearsay within hearsay, have no foundation, cannot be authenticated, are irrelevant, and are speculative. Fed. R. Evid. 401, 402, 602, 703, 801, 802, 805, 901.

8) Plaintiffs should be precluded from introducing complaints made by Living Essentials or its broker regarding poor sales to wholesalers. Fed. R. Evid. 403.

9) Plaintiffs should be precluded from calling non-party witnesses who failed to appear for deposition or were not properly disclosed. Fed. R. Evid. 403; Fed. R. Civ. P. 37(b)(1).

10) The Court should bar evidence not related to specific competing California Costco locations. FRE 401, 402, 403.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

Defendants have identified the specific proposed exhibit number of the documents that they seek to exclude in their motions in limine. The Court has now ruled on these motions, as well as Plaintiffs', but Living Essentials intends to seek clarification or reconsideration of the Court's rulings. Specifically:

- Plaintiffs' Motion *in Limine* No. 4: To Exclude Any Evidence, Argument, or Reference Relating To Other Robinson-Patman Act Litigation Brought By Plaintiffs – Defendants intend to seek clarification and/or reconsideration of the portion of the Court's Order granting Plaintiffs' MIL to exclude reference to and evidence of Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC, No. 5:18-cv-2605 (C.D. Cal.) on the basis that Costco is alleged to be a favored purchaser in that action.
- Living Essentials' Motion *in Limine* No. I: The Court should bar each Plaintiff from offering new evidence as to the identity of competing Costcos – Defendants intend to seek clarification and/or reconsideration of the Court's Order granting Defendants' second request.
- Living Essentials' Motion *in Limine* No. III: The Court should preclude Plaintiffs from offering documents, testimony or opinions that attempt to demonstrate competition or competitive injury through improper lay opinions, speculation, and hearsay/double hearsay – Defendants intend to seek clarification and/or reconsideration of the Court's Order.

**H. Issues of Law**

After the presentation of Plaintiffs' case, Living Essentials intends to make a Rule 50(a) motion on the following legal issues:

1) Plaintiffs' evidence is insufficient to establish actual competition, which is a necessary element of their Robinson-Patman Act claims.

2) Plaintiffs' evidence is insufficient to establish a price difference, which is a necessary element of their price discrimination claim under Section

2(a) of the Robinson-Patman Act.[6]

3) Plaintiffs' evidence is insufficient to establish competitive injury, which is a necessary element of their price discrimination claim under Section 2(a) of the Robinson-Patman Act.

4) Plaintiffs' evidence is insufficient to establish antitrust injury, which is a necessary element of their price discrimination claim under Section 2(a) of the Robinson-Patman Act.

5) Plaintiffs' evidence is insufficient to establish that Living Essentials paid for or furnished services to Costco that were not available on a proportional basis to Plaintiffs, which is a necessary element of their claims under Sections 2(d) and (e) of the Robinson-Patman Act.

6) Plaintiffs' California state law claims under the Unfair Practices Act and the Unfair Competition Law are dependent on their Robinson-Patman Act claims and fail as a matter of law for the same reasons.

7) Plaintiffs have not established damages for any of their claims.

## II. BIFURCATION OF ISSUES

None.

## III. JURY TRIAL

The parties have requested a jury trial.

## IV. ATTORNEYS' FEES

Attorneys' fees are available as damages under the applicable federal and state laws.

## V. ABANDONMENT OF ISSUES

For judicial economy, Living Essentials will abandon its Fifth Affirmative Defense for Good Faith/Justification, its Sixth Affirmative Defense for Failure to State a Claim, and its Seventh Affirmative Defense for Fault of Third Parties.

---

[6] See footnote 1.

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195

Plaintiffs have abandoned their claim for violation of Section (e) of the Robinson Patman Act.

Dated: September 20, 2019

**HAWXHURST HARRIS LLP**

By: */s/ Gerald E. Hawxhurst*
Gerald E. Hawxhurst (Bar No. 220327)
jerry@hawxhurstllp.com
Arya Towfighi (Bar No. 172418)
arya@hawxhurstllp.com
Sharon G. Gelbart (Bar No. 280760)
sharon@hawxhurstllp.com

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (*pro hac vice*)
epm@millerlawpc.com
Lawrence J. Murphy (*pro hac vice*)
ljm@millerlawpc.com
Melvin Butch Hollowell (*pro hac vice*)
mbh@millerlawpc.com
Martha J. Olijnyk (*pro hac vice*)
mjo@millerlawpc.com

*Attorneys for Defendants Living Essentials, LLC and Innovation Ventures, LLC*

HAWXHURST HARRIS LLP
11111 SANTA MONICA BOULEVARD, SUITE 620
LOS ANGELES, CALIFORNIA 90025
Tel: (310) 893-5150 • Fax: (310) 893-5195