UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. WHOLESALE OUTLET & DISTRIBUTION, INC. *et al*, <br><br> Plaintiffs, <br><br> vs. <br><br> LIVING ESSENTIALS, *et al*, <br><br> Defendants. | Case No.: CV 18-1077 CBM (Ex) <br><br> **ORDER RE: COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

This Order constitutes findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## **FINDINGS OF FACT**

1. The seven Plaintiffs are wholesale businesses that sell, among other merchandise, 5-hour ENERGY® in California. (Jury Instructions (ECF No. 498)1 ("Inst.") No. 3, ¶ 1; Amended Pretrial Conference Order (ECF No. 386) ("Am. PTCO") at ¶ 5.1.)

2. Defendants Living Essentials, LLC and Innovation Ventures, LLC are Michigan limited-liability companies with their principal place of business in

Oakland County, Michigan. (Answer to Second Amended Complaint (ECF No. 39) ("Answer") ¶ 27.)

3. Living Essentials, LLC is the manufacturer and distributor of 5-hour ENERGY®, and Innovation Ventures, LLC is its corporate parent. Both companies are referred to together as "Living Essentials." (Inst. No. 3, ¶ 2; Am. PTCO at ¶ 5.2.)

4. Living Essentials has manufactured and sold 5-hour ENERGY® since 2004.

5. Living Essentials manufactures all bottles of 5-hour ENERGY® in Wabash, Indiana, and then sells and distributes them around the country, including California.

10. Living Essentials uses an independent broker to sell 5-hour ENERGY to Costco Wholesale Corporation. At different times during the relevant period, those brokers were Level One Marketing, Advantage Sales & Marketing, and Innovative Club Partners. (Inst. No. 3, ¶ 6; Am. PTCO at ¶ 5.6.)

#*. Living Essential also uses independent broker, Paramount Sales Group, to sell 5-hour Energy to Plaintiffs and other wholesalers in California.

11. Costco operates two types of stores, the "regular" Costco stores, which cater to consumers, and a separate type called the Costco Business Centers, which cater primarily—but not exclusively—to small businesses. (Inst. No. 3, ¶ 7; Am. PTCO at ¶ 5.7.)

12. From 2012 to December 2015 there were four Costco Business Centers in California (Commerce, San Diego, Hawthorne, and Hayward). In December 2015, the Westminster Costco Business Center was opened. In August 2017, Burbank and South San Francisco Costco Business Centers were opened. (Inst. No. 3, ¶ 8; Am. PTCO at ¶ 5.8.)

13. There was at least one Costco Business Center in close proximity to each of the Plaintiffs or their customers. (Ex. 364-3 3 (maps showing locations of

1  Plaintiffs' businesses and Costco Business Centers) & 10/15 Tr. 20:24-21:11; see
2  also 10/3 Tr. 122:12-17 (Mansour); 10/4 Tr. 35:4-25 (Amini); 10/4 Tr. 96:5-97:15
3  (Rashid); 10/4 Tr. 131:10-132:4 (Kohanim); 10/7 Tr. 157:12-19 (Ali); 10/7 Tr.
4  178:4-12, 259:17-260:3, 263:15-18 (Wahidi); 10/10 Tr. 220:15-221:16, 225:1-21
5  (Krishan); 10/10 Tr. 238:25-239:2 (Pae); 10/15 Tr. 69:17-70:6 (Paulus).)

14. Living Essentials' "list price" to Plaintiffs was $1.45 per bottle for regular strength and $1.60 per bottle for extra-strength 5-hour ENERGY® from January 2012 through January 2019. (Answer ¶ 41; Response to RFA (ECF No. 179-1) No. 7; Exs. 872-878.)

15. Living Essentials' "list price" to Costco was $1.35 per bottle for regular strength and $1.50 per bottle for extra-strength 5-hour ENERGY® from January 2012 through January 2019. (Answer ¶ 41; Response to RFA (ECF No. 179-1) No. 8; Ex. 879.)

16. On January 14, 2019, Living Essentials increased its "list price" to Plaintiffs and Costco by $.05 per bottle. (Exs. 872-879.)

18. Living Essentials sold 5-hour ENERGY® drinks in bottles of like grade and quantity. (Proposed PTCO at 5 ("Defendants do not dispute that 5-hour ENERGY® are sold in bottles of like grade and quantity."); Order re Motions for Summary Judgment (ECF No. 289) at 4; Answer ¶ 30.)

## CONCLUSIONS OF LAW

**I.      Robinson-Patman Act**

315. Under the Clayton Act as amended by the Robinson-Patman Act ("RPA"), 15 U.S.C. §13(d): "Payment for services or facilities for processing or sale. It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities

manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

316. In order to prevail on a Section 2(d) claim, a plaintiff must prove: (1) sales made in interstate commerce; (2) sales of commodities of like grade and quality; (3) actual competition between the alleged favored and disfavored purchaser for the same customers and the same dollars; (4) that the seller paid the alleged favored purchaser for services or facilities (promotional allowances) to be used primarily to promote the resale of the product that were not available on proportionately equal terms and which also requires the purchasers to be operating at the same functional levels in the supply chain; and (5) damages which, in a private plaintiff antitrust case such as this, each plaintiff must prove antitrust injury, which means the type of injury the antitrust laws were designed to prevent, which was a material cause of each plaintiff's injury. 15 U.S.C. § 13(d); *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006); *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743 (7th Cir. 2016); *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191 (3d Cir. 2010); *England v. Chrysler Corp.*, 493 F.2d 269, 271-72 (9th Cir. 1974).

318. The RPA protects competition between specific firms competing for the same retail customers for the same product. *Volvo*, 546 U.S. at 177-79; *see also M.C. Mfg. Co. v. Tex. Foundries, Inc.*, 517 F.2d 1059, 1068 n.20 (5th Cir. 1975) ("Competition is determined by careful analysis of each party's customers. Only if they are each directly after the same dollar are they competing.")

319. One of the foundational analyses in antitrust is the definition of a market, which is based in part on analysis of cross-elasticity of demand between various firms that might potentially compete. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 400 (1956) (cross-elasticity of demand is indicated by "responsiveness of the sales of one product to price changes of the other");

*Eastman Kodak Co. v. Image Tech.*, 504 U.S. 451, 469 (1992) (analysis of competition based on "cross-elasticity of demand," meaning "extent to which consumers will change their consumption of one product in response to a price change in another"). "[W]hen demand for the commodity of one producer shows no relation to the price for the commodity of another producer, it supports the claim that the two commodities are not in the same relevant market." *Forsyth v. Humana*, 114 F.3d 1467, 1477 (9th Cir. 1997), overruled on other grounds, 693 F.3d 896, 927 (9th Cir. 2012).

320. [T]he disfavored purchaser and the favored purchaser must be in the same geographic market." *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 521 (6th Cir. 2004); accord *Tri-Valley Packing Ass'n v. FTC*, 329 F.2d 694, 708-09 (9th Cir. 1964).

323. A proper analysis of the existence of competition involves a systematic study of sales and pricing – a determination of consumer price sensitivity and demand substitution - to show actual linkage between the two firms in terms of whether they are competing for the same dollar. *Volvo*, supra at 179-81; *Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1041 (9th Cir. 1987).

### A. Implicit Findings by the Jury

324. To state a claim, Plaintiffs have the burden to prove that Plaintiffs competed with Costco. Whether Plaintiffs and Costco are competing with each other is an overlapping factual determination for both the claims under 15 U.S.C. §13(a) and 13(d) (the Section 2(a) and 2(d) claims) of the RPA. *Volvo Trucks N.Am., Inc., v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006); *England v. Chrysler Corp.*, 493 F.2d 269, 271-72 (9th Cir. 1974); *Tri-Valley Packing Ass'n v. F.T.C.*, 329 F.2d 694, 707 (9th Cir. 1964).

325. The dominant issue addressed in one form or another by almost every witness was the issue of whether Plaintiffs compete with Costco.

326. The Jury's rejection of liability in Question 1 of the Verdict on the 2(a) claim implicitly rejected Plaintiffs' theory that Plaintiffs and Costco are competing with each other. In cases where legal claims are tried by a jury, equitable claims are tried by a judge, and the claims are based on the same facts, the "Seventh Amendment requires the Court to follow the jury's implicit or explicit factual determinations" in deciding the equitable claims. *Los Angeles Police League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993).

327. Therefore, this Court will follow the jury's implicit finding of a lack of competition and hold that Plaintiffs did not prove, as they must, that they were in competition with Costco.

328. This Court has also twice denied Plaintiffs' motion for judgment as a matter of law [ECF No. 550 at 144:7-14 and ECF No. 589 (Minutes of Telephone Status Conference)] and denied Plaintiffs' motion for a new trial on the Section 2(a) claims. [ECF No. 589 (Minutes of Telephone Status Conference)] Since liability was not established, Plaintiffs are not entitled to any relief, whether legal or equitable, under Section 2(a).

**B.  The Court's Independent Review of the Evidence on the Question of Competition Results in a Finding that Plaintiffs Have Not Proven the Existence of Competition and Defendants Have Proven the Lack of Competition**

350. This Court finds that Defendants proved that Plaintiffs and Costco were not in competition with each other.

**C.  Plaintiffs Did Not Prove Antitrust Injury**

352. "Absent actual competition with a favored dealer ...[Plaintiffs] cannot establish the competitive injury required under the" RPA. *See Volvo*, 546 U.S. at 177. Having concluded that Plaintiffs have not proven they competed with Defendants, it follows that Plaintiffs likewise cannot prove an antitrust injury.

### D. Plaintiffs and Costco Do Not Operate on the Same Functional Level

367. In order to prevail, Plaintiffs must show that promotional allowances are not available on proportionally equal terms to competing customers. 15 U.S.C. §13(d). The trial record shows that Defendants made promotional allowances available on proportionally equal terms here. The evidence was unrebutted at trial that Defendants treated participants within the relevant distribution channels (the C-Store channel on the one hand and the Club channel on the other) the same, offering the same pricing, discounts, and promotions within each channel.

368. If Plaintiffs and Costco occupy different places in the channels of distribution, they do not operate at the same functional level. If they do not operate at the same functional level, Plaintiffs cannot prevail on their claim. Plaintiffs must show that they and Costco "are operating **solely** on a particular functional level such as wholesaler or retailing." *Tri-Valley*, supra, at 708 (bold added) (competitors at issue were both wholesalers).

369. The evidence showed that Plaintiffs and Costco do not occupy the same functional level. Unlike Costco, Plaintiffs are not retailers. Plaintiffs are wholesalers that resell to convenience stores, jobbers, and other wholesalers, rather than to the ultimate consumer. On the other hand, the vast majority of Costco's sales were made to ultimate consumers. Because Plaintiffs and Costco are on different functional levels, Plaintiffs have not met the requirements under §2(d). *See also, Bryant Corp.*, 1994 WL 745159 at *5 granting summary judgment to defendant on RPA claim, in part, because the plaintiff "failed to show that . . . an Oregon retail dealer selling to consumers, and . . .a Washington wholesale distributor selling to retail dealers, were in actual, functional competition with one another as required to establish price discrimination under the Robinson-Patman Act.").

## II. California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200 and §17205

382. In order to succeed on a UCL claim, Plaintiffs must prove "unfair competition," which "shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

383. "An action for unfair trade practices under [Cal. Bus. & Prof. Code] § 17200, arises when a business practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554, 562 (Cal. App. 1996).

386. Plaintiffs have long maintained that the conduct underlying their UCL claim is the same conduct that underlies their RPA claims. Since the jury already returned a verdict against Plaintiffs as to their Section 2(a) claim, and Plaintiffs similarly failed to establish liability on their Section 2(d) claim, they are therefore not entitled to any relief on their UCL claim. The law is clear that where the same underlying conduct is alleged to underlie a UCL claim and an RPA claim, the claims will rise and fall together. *See Consumer Def. Group v. Rental Hous. Indus Members*, 137 Cal. App. 4th 1185, 1220 (2006) (dismissing UCL claim where predicate claims were dismissed); *LiveUniverse*, 304 Fed. App'x. at 557–58 (2008); *Chavez*, Cal. App. 4th at 375.

389. The Court therefore concludes that, because Plaintiffs' unfair competition claim under the UCL is predicated on the same conduct that underlies Plaintiffs' price discrimination claims under the RPA, Plaintiffs' UCL claim fails if their price discrimination claims fail. *Petroleum Sales, Inc. v. Valero Ref. Co.*, 304 F. App'x. 615, 617 (9th Cir. 2008).

393. Conduct determined not to violate antitrust laws cannot be considered unfair under the UCL where the same underlying conduct underlies both claims. "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2001). California courts have noted that permitting a separate inquiry into conduct that was held not to violate federal antitrust prohibitions but that presents essentially the same question under the UCL only invites conflict and uncertainty and could lead to enjoining procompetitive conduct. *See id.* (citing *Cel-Tech Comms. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999)).

394. Plaintiffs argue that a "court's finding under the 'unfair' prong can be based merely on conduct that 'violates the policy or spirit of one of th[e] [antitrust] laws," and that the Court is therefore free to find Defendants liable under the UCL even if Defendants are not liable under Plaintiffs' federal antitrust claims and therefore are not liable under the UCL's "unlawful" prong. [Pls' Reply Br. in Supp. of Relief Mot. at 9:2–7 (citation omitted).] This is not correct. "Where … the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim [under the UCL], a finding that the conduct is not an antitrust violation precludes a finding of unfair competition." *LiveUniverse Inc. v MySpace*, 304 Fed. App'x. 554, 557–58 (9th Cir. 2008); *see also Chavez*, Cal. App. 4th at 375. There, the UCL claim failed because the federal claim failed where both were predicated on the same allegations. *LiveUniverse*, 304 Fed. App'x at 558.

395. The Court further finds that Plaintiffs waived this claim based on the UCL's unfairness prong by their previous repeated pronouncements that their UCL claim asserts the same liability theory as their RPA claim and covers no additional

ground. [See Pls.' Br. in Opp. to Defs.' Mot. for Sum. J., ECF No. 200, at 25:12–13; Pls.' Post-Trial Br., ECF No. 495, at 12:21–13:1 & n. 6; Pls.' Mot. for Perm. Injunction, ECF No. 582, at 25:12–13].

396. Moreover, Plaintiffs' rely on the same factual pattern of conduct to support their liability claims under the UCL's unfairness prong as they point to on their RPA claims. [See Pls' Mot. for Perm. Injunction, ECF No. 582, at 17:10–22.

### III. Plaintiffs Fail to Establish Entitlement to Any Relief

398. Plaintiffs seek injunctive relief under both Section 2(d) and the UCL.

399. Injunctive relief is an extraordinary remedy that is "never awarded as of right" but is relief that should be carefully crafted and awarded only when absolutely necessary. *Winter v. NRDC*, 555 U.S. 7, 24 (2008).

400. The plaintiff bears "the heavy burden of establishing they are entitled to injunctive relief." *Blizzard Ent. Inc. v. Ceiling Fan Software, LLC*, 28 F. Supp. 3d 1006, 1018 (C.D. Cal. 2013). A plaintiff seeking a mandatory injunction has a doubly demanding burden because the relief "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Plaintiffs here seek a "mandatory injunction," which is "injunction that orders an affirmative act or mandates a specified course of conduct." Black's Law Dictionary (11th ed. 2019), "Injunction." Mandatory injunctions should be avoided "unless the facts and law clearly favor the moving party." *Id.*

403. Although an injunction is an available remedy under the RPA, *see Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1042 (9th Cir. 1987), injunctive relief must still be analyzed through the framework of equitable principles governing equitable relief. *See Ingram v. Phillips Petroleum Co.*, 259 F. Supp. 176, 183 (D.N.M. 1966) ("General equitable principles governing the granting of relief in other equity cases apply to the so-called trade cases," including an action for injunction under the RPA)).

405.     Before the Court can grant a permanent injunction, Plaintiffs must meet their burden to establish four elements: (1) irreparable injury; (2) inadequate legal remedies; (3) a balance of the hardships that weighs in their favor and against Defendants; and (4) a public interest that a permanent injunction will not disserve. *Blizzard Entert. Inc. v. Ceiling Fan Software, LLC*, 28 F.Supp.3d 1006, 1018 (C.D. Cal. 2013); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010); *Perfect 10 v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011).

Since Plaintiffs did not prevail on either the Section 2(a) claim, the 2(d) claim or the § 17200, there is no evidence that would support the issuance of a permanent injunction.

**IT IS SO ORDERED.**

DATED: August 5, 2021

_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE