UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. WHOLESALE OUTLET & DISTRIBUTION, INC. *et al*,<br><br>         Plaintiffs,<br>v.<br><br>LIVING ESSENTIALS, *et al*,<br><br>         Defendants. | Case No.: 2:18-cv-01077-CBM-E<br><br>**COURT'S AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

On August 5, 2021, this Court entered Findings of Fact and Conclusions of Law in this action consistent with its adjudication of Plaintiffs' claims under section 2(d) of the Robinson-Patman Act and section 17200 of California's Unfair Competition Law (Dkt. No. 617) and entered judgment consistent with its adjudication of those claims and with the jury's verdict on Plaintiffs' section 2(a) claim under the Robinson-Patman Act (Dkt. No. 618). Plaintiffs appealed the judgment. (Dkt. No. 619.) On January 2, 2024, the Ninth Circuit issued its mandate in the appeal. (Dkt. No. 634.) The mandate affirmed the Court's jury instructions regarding reasonably contemporaneous sales and functional discounts, but vacated the Court's adjudication of the section 2(d) claim and remanded for the Court to "consider whether Costco and the Wholesalers purchased 5-hour Energy from

1

Living Essentials 'within approximately the same period of time' . . . or whether the Wholesalers have otherwise proved their section 2(d) claim." *U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1147–48 (9th Cir. 2023). On July 29, 2024, Plaintiffs filed a motion for entry of findings of fact and conclusions of law and a motion for permanent injunction after remand. (Dkt. Nos. 652, 653.) The Court hereby makes the below amended findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I. FINDINGS OF FACT

1. The seven Plaintiffs are wholesale businesses that sell, among other merchandise, 5-hour ENERGY® in California. (Jury Instructions (Dkt. No. 498) ("Inst.") No. 3, ¶ 1; Final Pretrial Conference Order (Dkt. No. 402) ("PTCO") at ¶ 5.1.)

2. Defendants Living Essentials, LLC and Innovation Ventures, LLC are Michigan limited-liability companies with their principal place of business in Oakland County, Michigan. (Answer to Second Amended Complaint (Dkt. No. 39) ("Answer") ¶ 27.)

3. Living Essentials, LLC is the manufacturer and distributor of 5-hour ENERGY®, and Innovation Ventures, LLC is its corporate parent. Both companies are referred to together as "Living Essentials." (Inst. No. 3, ¶ 2; PTCO at ¶ 5.2.)

4. Living Essentials has manufactured and sold 5-hour ENERGY® since 2004.

5. Living Essentials manufactures all bottles of 5-hour ENERGY® in Wabash, Indiana, and then sells and distributes them around the country, including California.

6. Living Essentials uses an independent broker to sell 5-hour ENERGY® to Costco Wholesale Corporation ("Costco"). At different times during the relevant period, those brokers were Level One Marketing, Advantage Sales & Marketing, and Innovative Club Partners. (Inst. No. 3, ¶ 6; PTCO at ¶ 5.6.)

7. Living Essentials also uses independent broker, Paramount Sales Group, to sell 5-hour Energy to Plaintiffs and other wholesalers in California. (PTCO at ¶ 5.5.)

8. Costco operates two types of stores: the "regular" Costco stores, which cater to consumers, and a separate type called the Costco Business Centers ("CBCs"), which cater primarily—but not exclusively—to small businesses. (Inst. No. 3, ¶ 7; PTCO at ¶ 5.7.)

9. From 2012 to December 2015 there were four CBCs in California (Commerce, San Diego, Hawthorne, and Hayward). In December 2015, the Westminster CBC was opened. In August 2017, Burbank and South San Francisco CBCs were opened. (Inst. No. 3, ¶ 8; PTCO at ¶ 5.8.)

10. There was at least one CBC in close proximity to each of the Plaintiffs. (Ex. 364-3 at 3 (maps showing locations of Plaintiffs' businesses and CBCs) & 10/15/2019 Trial Tr. at 20:24-21:11; *see also* 10/3/2019 Trial Tr. at 122:12-17 (Mansour); 10/4/2019 Trial Tr. at 35:4-25 (Amini); *id*. at 96:5-97:15 (Rashid); *id*. at 131:10-132:4 (Kohanim); 10/7 Trial Tr. at 157:12-19 (Ali); *id*. at 178:4-12, 259:17-260:3, 263:15-18 (Wahidi); 10/10 Trial Tr. at 220:15-221:16, 225:1-21 (Krishan); *id*. at 238:25-239:2 (Pae); 10/15 Trial Tr. at 69:17-70:6 (Paulus).)

11. Living Essentials sold 5-hour ENERGY® drinks in bottles of like grade and quality. (PTCO at 8.)

12. Each of the Plaintiffs and the CBCs in close proximity to the respective Plaintiffs purchased 5-hour ENERGY® drinks from Living Essentials within approximately the same period time on several occasions. (Exs. 125, 126, 762-65, 767, 791-92.)

13. "[T]he evidence shows that Costco and the Wholesalers operated at the same functional level in the same geographic area." *U.S. Wholesale*, 89 F.4th at 1146.

14. Living Essentials' "list price" to Plaintiffs was $1.45 per bottle for

3

regular strength and $1.60 per bottle for extra-strength 5-hour ENERGY® from January 2012 through January 2019. (Response to RFA (Dkt. No. 179-1) No. 7; Exs. 872-878.)

15. Living Essentials' "list price" to Costco was $1.35 per bottle for regular strength and $1.50 per bottle for extra-strength 5-hour ENERGY® from January 2012 through January 2019. (Response to RFA (Dkt. No. 179-1) No. 8; Ex. 879.)

16. On January 14, 2019, Living Essentials increased its "list price" to Plaintiffs and Costco by $.05 per bottle. (Exs. 872-879.)

17. The payments Living Essentials made to Costco for Instant Rebate Coupons ("IRCs") could be separated from payments made for "marketing items," which include "fences, endcaps, [and] advertising." (10/17/2019 Trial Tr. at 78:3-22, 82:10-13 (Living Essentials' CFO, Mathew Dolmage, discussing Ex. 161-G, which lists the various payments Defendants made to Costco).)

18. Approximately $3,168,040 of the payments in Exhibit 161-G were related to IRCs. (*Id.* at 82:9.) The total value of payments reflected in Exhibit 161-G is $9,740,954. (Ex. 161-G at 9.) Accordingly, subtracting the IRC-related payments from the total value equals $6,572,914 in payments related to non-IRC promotional payments.

19. The sum of promotional payments Living Essentials made to Plaintiffs was "about $161,000." (10/17/2019 Trial Tr. at 83:10-20, 84:5-8.)

20. Costco received promotions of greater value than those Plaintiffs received. The promotions to Costco were worth 14.7 cents a bottle, while the promotions to Plaintiffs were worth 0.5 to 2.7 cents a bottle. (Exs. 125, 126, 762-65, 767, 791-92, 161-G, 171-G).

21. Living Essentials contends that $860,000 in other promotions that Plaintiffs received should also be considered under section 2(d). Even assuming that such promotions are properly considered under section 2(d), Living Essentials'

4

promotional payments to Plaintiffs were still disproportionate to the payments made to Costco. Including the $860,000 in other promotions, the promotional value Plaintiffs received was 9.4 cents a bottle, which is still lower than the 14.7 cents promotional value Costco received. (*Id.*)

22. Therefore, Living Essentials made promotional allowances to Costco that it did not make available to Plaintiffs on proportional terms.

23. The non-IRC promotions were "fences, endcaps, and advertising" promotions. The non-IRC promotions allowed Costco to experience a "sales lift" in 5-hour ENERGY®, and Plaintiffs expected to receive a similar sales lift had Defendant offered them the same promotions. (*See* Ex. 161-R; 10/3/2019 Trial Tr. at 173:12-19; Meguiar Depo. at 89:01-11; 10/11/2019 Trial Tr. at 154:22-155:6.)

## II. CONCLUSIONS OF LAW

24. Pursuant to the Ninth Circuit's mandate, the Court now considers whether Plaintiffs have proved their section 2(d) claim under the Robinson-Patman Act. *See U.S. Wholesale*, 89 F.4th at 1147–48.

25. The Robinson-Patman Act ("RPA"), 15 U.S.C. § 13(d) provides: "It shall be unlawful for any person engaged in commerce to pay . . . anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services . . . by or through such customer in connection with the processing, handling, sale, or offering for sale of any products . . . manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities."

26. In order to prevail on a Section 2(d) claim, a plaintiff must prove: (1) sales made in interstate commerce; (2) sales of commodities of like grade and quality; (3) actual competition between the alleged favored and disfavored purchaser for the same customers and the same dollars; (4) that the seller paid the alleged favored purchaser for services or facilities (promotional allowances) to be

5

used primarily to promote the resale of the product that were not available on proportionately equal terms and which also requires the purchasers to be operating at the same functional levels in the supply chain; and (5) damages which, in a private plaintiff antitrust case such as this, each plaintiff must prove antitrust injury, which means the type of injury the antitrust laws were designed to prevent, which was a material cause of each plaintiff's injury. *See* 15 U.S.C. § 13(d); *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164 (2006); *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743 (7th Cir. 2016); *Feesers, Inc. v. Michael Foods, Inc.*, 591 F.3d 191 (3d Cir. 2010); *England v. Chrysler Corp.*, 493 F.2d 269, 271-72 (9th Cir. 1974).

### A. "In Competition"

27. "[T]o establish that two customers are in general competition, it is sufficient to prove that: (1) one customer has outlets in geographical proximity to those of the other; (2) the two customers purchased goods of the same grade and quality from the seller within approximately the same period of time; and (3) the two customers are operating on a particular functional level such as wholesaling or retailing." *U.S. Wholesale Outlet & Distribution, Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1142 (9th Cir. 2023).

28. Based on the evidence in the record and the Ninth Circuit's mandate, the Court finds that Plaintiffs proved they were in competition with the CBCs.

### B. Disproportionate Promotional Allowances

29. Contrary to Living Essentials' arguments (*see* Dkt. No. 659 at 17), Plaintiffs are not judicially estopped from arguing that the non-IRC promotional allowances in Exhibit 161-G are not part of the price of Living Essentials' product. Neither the Ninth Circuit decision nor this Court's summary judgment order held that the non-IRC promotions were part of price under section 2(a). In fact, the summary judgment order denied summary judgment on the section 2(d) claim because there was conflicting evidence "regarding whether Defendants made

6

promotional payments to Costco that were not available to Plaintiffs." (Dkt. No. 289 at 10.) "[C]ourts can construe the separate parts of a multi-part transaction separately" and split the promotional allowance part of a transaction from the price discount part. *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1066 (N.D. Cal. 2001).

30. Living Essentials cites 16 C.F.R. § 240.9 to argue that the promotions were tailored to the different needs of Plaintiffs and Costco, and therefore, were still proportionally equal. (Dkt. No. 659 at 20.) 16 C.F.R. § 240.9(a) states that there is "[n]o single way to" make promotions available on proportionally equal terms, but that "[g]enerally, this can be done most easily by basing the payments made or the services furnished on the dollar volume or on the quantity of the product purchased during a specified period." 16 C.F.R. § 240.9(b) provides further guidance that when sellers offer more than one type of service or payments for more than one type of service, they can offer such services and payments on proportionally equal terms "by offering all the payments or services at the same rate per unit or amount purchased."

31. 16 C.F.R. § 240.9 does not support Living Essentials' position that the promotions can still be considered "proportionally equal" where the dollar per unit value of the promotions to Plaintiffs fall far below the value of promotions to Costco. Moreover, Living Essentials fails to explain what benchmark other than dollar value should be used to evaluate proportionality or how, under that benchmark, the promotions were equal.

**C.    Threat of Antitrust Injury**

32. "Robinson-Patman does not ban all price differences charged to different purchasers of commodities of like grade and quality . . . ; rather, the Act proscribes price discrimination only to the extent that it threatens to injure competition." *Volvo*, 546 U.S. at 176. The Supreme Court has identified "three categories of competitive injury that may give rise to a Robinson-Patman Act claim:

primary line, secondary line, and tertiary line." At issue here is secondary-line injury, which "involve[s] price discrimination that injures competition among the discriminating seller's customers." *Id*.

33. The Ninth Circuit has "identified four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1273 (9th Cir. 2022).

34. The "requisite injury and damages may not be presumed from a showing of discrimination alone." *Id.*; *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 737 (9th Cir. 1987) (concluding that a plaintiff may "not maintain its claim for injury and damages based solely on its allegation that discrimination in providing services occurred," but must also show that "its failure to receive certain services affected its ability to compete with its allegedly favored competitor."). "A hallmark of the requisite competitive injury [in secondary-line cases] is the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Volvo*, 546 U.S. at 177.

35. Therefore, to show the threat of antitrust injury, Plaintiffs must prove that Living Essentials' conduct threatened Plaintiffs' ability to compete with Costco for sales of 5-hour ENERGY® by offering evidence that their "failure to receive an advertising allowance . . . enabled [Costco] to lower [its] prices and divert sales, or that [Plaintiffs were] required to lower [their] prices to an unprofitable level in response to such low prices." *Rutman*, 829 F.2d at 737.

36. Plaintiffs have not met their burden by simply arguing that the "depriv[ation] of hundreds of thousands of dollars in promotional payments"—*i.e.*, the discrimination itself—is sufficient to show antitrust injury. (Dkt. No. 652 at 20–21 (citing *L.A. Int'l Corp. et al. v. Prestige Consumer Healthcare, Inc.*, (C.D. Cal. May 20, 2024)).) This alone is not sufficient under Ninth Circuit law to show

8

an injury "of the type the antitrust laws were intended to prevent." *Ellis*, 24 F.4th at 1273.

37. Plaintiffs cannot rely on evidence of injury caused by IRC promotions to prove antitrust injury under section 2(d). *See U.S. Wholesale*, 89 F.4th at 1145 ("The Wholesalers do not challenge the district court's holding that they are judicially estopped from seeking an injunction on the ground that the IRCs are promotional services in connection with resale under section 2(d). Therefore, any challenge to this finding is waived, and potential injunctive relief under section 2(d) excludes relief related to IRCs.").

38. Plaintiffs' evidence that Costco received a sales lift from the non-IRC allowances and that Plaintiffs expected to receive a similar sales lift had Defendant offered them the same promotions does not establish that the sales lift caused or threatened to cause Plaintiffs competitive harm—the evidence does not show "that the allowance enabled [Costco] to lower [its] prices and divert sales [from Plaintiffs], or that [Plaintiffs were] required to lower [their] prices to an unprofitable level in response to such low prices." *Rutman*, 829 F.2d at 737.

39. Testimony regarding antitrust injury from Plaintiffs' expert, DeForest McDuff, did not distinguish between injury resulting from IRC promotions and injury resulting from non-IRC promotions. *See Perkins v. Standard Oil Co. of Cal.*, 395 U.S. 642, 648 (1969) (noting an injured party "must be able to show a causal connection between the . . . discrimination in violation of the Act and the injury suffered").

40. Therefore, the evidence does not establish that the lack of proportionally equal, non-IRC promotions caused or threatened to cause injury to Plaintiffs' ability to compete with Costco, and Plaintiffs have not proved by a preponderance of the evidence the threatened antitrust injury needed to prevail on their section 2(d) claim.

**D.   California Unfair Competition Law ("UCL")**

41.   In order to succeed on a UCL claim, Plaintiffs must prove "unfair competition," which "shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

42.   The law is clear that where the same underlying conduct is alleged to underlie a UCL claim and an RPA claim, the claims will rise and fall together. *See Consumer Def. Group v. Rental Hous. Indus Members*, 137 Cal. App. 4th 1185, 1220 (2006) (dismissing UCL claim where predicate claims were dismissed); *LiveUniverse Inc. v MySpace*, 304 Fed. App'x. 554, 557–58 (9th Cir. 2008) (Where . . . the same conduct is alleged to support both a plaintiff's federal antitrust claims and state-law unfair competition claim [under the UCL], a finding that the conduct is not an antitrust violation precludes a finding of unfair competition"); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2001).

43.   Plaintiffs have long maintained that the conduct underlying their UCL claim is the same conduct that underlies their RPA claims. Because Plaintiffs' unfair competition claim under the UCL is predicated on the same conduct that underlies Plaintiffs' price discrimination claims under the RPA and Plaintiffs have not prevailed on their RPA claims, Plaintiffs' UCL claim similarly fails. *See Petroleum Sales, Inc. v. Valero Ref. Co.*, 304 F. App'x. 615, 617 (9th Cir. 2008).

**E.   Injunctive Relief**

44.   Injunctive relief is an extraordinary remedy that is "never awarded as of right" but is relief that should be carefully crafted and awarded only when absolutely necessary. *Winter v. NRDC*, 555 U.S. 7, 24 (2008).

45.   The plaintiff bears "the heavy burden of establishing they are entitled to injunctive relief." *Blizzard Ent. Inc. v. Ceiling Fan Software, LLC*, 28 F. Supp. 3d 1006, 1018 (C.D. Cal. 2013). A plaintiff seeking a mandatory injunction has a

doubly demanding burden because the relief "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

46. Plaintiffs seek a permanent injunction requiring Living Essentials to allow Plaintiffs to participate, on proportionally equal terms, in all promotional programs and payments that Living Essentials offers to Costco in connection with the handling, sale, or offering for sale of 5-hour Energy. (Dkt. No. 653 at 18.)

47. The Court can only grant a permanent injunction if Plaintiffs establish four elements: (1) irreparable injury; (2) inadequate legal remedies; (3) a balance of the hardships that weighs in their favor and against Living Essentials; and (4) a public interest that a permanent injunction will not disserve. *Blizzard Entert. Inc. v. Ceiling Fan Software, LLC*, 28 F.Supp.3d 1006, 1018 (C.D. Cal. 2013); *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010); *Perfect 10 v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011).

48. Since Plaintiffs did not prevail on their Section 2(a) claim, 2(d) claim, or UCL claim, there is no evidence that would support the issuance of a permanent injunction.

49. Any finding of fact which constitutes a conclusion of law is hereby deemed as a conclusion of law. Any conclusion of law which constitutes a finding of fact is hereby deemed a finding of fact.

**IT IS SO ORDERED.**

DATED: May 28, 2025

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE